## FIDELITY INSURANCE TRUST & SAFE-DEPOSIT CO. v. ROANOKE IRON CO.

### (Circuit Court, W. D. Virginia. September 6, 1898.)

RECEIVERSHIP — FACTORS' INTEREST IN PROPERTY CONSIGNED — ATTORNEY'S FEES.

> In a proceeding brought by the receiver of an insolvent iron company against certain brokers to determine their interest in a quantity of iron in their possession for sale under a contract with the iron company, it was adjudged that the brokers had title to the iron, but were ordered to account to the receiver, after disposing of the iron, for the net balance remaining after reimbursement of advances and expenses. *Held*, that the brokers were not entitled to deduct from such balance any sum for attorney's fees and expenses incurred in defending their title to the iron, either under a provision in their contract with the iron company allowing them "expenses incidental to distributing the iron," or on the ground that they were acting as agents in defending the title, or on the ground of damage caused by the injunction restraining them from disposing of the iron.

Seward, Guthrie, Morawets & Steele, for Crocker Bros.

John Douglas Brown and Scott & Staples, for Philadelphia Warehouse Co.

PAUL, District Judge. The question to be disposed of arises on the application of Crocker Bros., creditors of the defendant company, to have allowed them, out of the fund under control of the court, the sum of $4,574.12 for expenses for counsel fees and attending the various hearings in the cause. Prior to and at the time of the appointment of the receiver in this cause, Crocker Bros., who were brokers in New York, had a contract with the Roanoke Iron Company, as agents, for the sale of said company's iron. Under the contract, the iron was shipped to Crocker Bros. on bills of lading in their name, was stored by them, and sold by them at their discretion; they advancing a stipulated proportion of the market price to the iron company, and accounting for the proceeds when the iron was sold, no control over these sales being reserved to the iron company. The contract contained this provision: "Account current will be rendered at suitable periods, and include proceeds of sales, payments on account, and any expenses of transportation, marine insurance, storage charges, or expenses of any nature incidental to distributing and delivering the iron." At the time of the appointment of the receiver, on the 25th of January, 1895, Crocker Bros. had in their possession, under their contract, about 6,000 tons of iron, 4,000

of which were stored upon the premises of the Norfolk & Western Railroad Company at Lambert's Point, Va., and 2,000 in the city of Roanoke, Va. On the 2d day of February, 1895, the receiver, at the instance of certain supply lien creditors, filed a petition stating substantially the foregoing facts, making as parties defendant thereto said Crocker Bros. and persons claiming to be supply lien creditors. The cause was referred to a master, to take an account of the property, real and personal, of the Roanoke Iron Company, the liens thereon, and their priorities. As to the 6,000 tons of iron, the master reported that Crocker Bros. were to be deemed factors, who had made advances on the iron in their possession and had a factors' lien upon the same; which lien, however, the master reported, was subordinate to the lien given by a statute of Virginia to supply creditors. Code Va. 1887, § 2485. Crocker Bros. excepted to this finding of the master, and the exception was sustained, the court holding that Crocker Bros. held the legal and beneficial title to the iron, and that the iron company had a right to an account from Crocker Bros., and, on such account, a demand for the balance of money appearing due thereon,—the balance being the result after reimbursing the loans and payment of the expenses. It further determined: "When the iron is disposed of, Crocker Bros. must account with the receiver for the net balance which remains, and it will be applied by him to the payment of creditors according to their legal or statutory priorities." Fidelity Insurance, Trust & Safe-Deposit Co. v. Roanoke Iron Co., 81 Fed. 439. In accordance with this decision, Crocker Bros. disposed of the iron, and rendered their account to the receiver, charging therein the sum of $4,574.12, attorney's fees and expenses incurred in defending their title to the said 6,000 tons of iron against the claims of the supply lien creditors. This contention is based on, first, that clause of the contract which provides that Crocker Bros. shall be allowed "expenses of any nature incidental to distributing and delivering the iron." This is not an unusual provision in contracts of this character, and its purpose and scope are clearly shown by its terms. It contemplates the usual and ordinary expenses arising out of the business transaction in hand. There is nothing in the contract indicating that the parties contemplated that the title to the iron might be called in question, and Crocker Bros. required to defend their right thereto. It was not anticipated that the Roanoke Iron Company would become insolvent; that insolvency would be followed by the extraordinary proceedings attending the appointment of a receiver,—the marshaling of assets, and the ascertainment of debts and their priorities, with the litigation incident to conflicting claims and the contentions of creditors for the priority of their liens. It would be a strained construction of the contract to hold that attorney's fees and other expenses incurred in litigation of this character are embraced within the terms, "expenses of any nature incidental to distributing and delivering the iron."

Nor is the second ground taken in the argument, that Crocker Bros. were acting as agents or trustees of the iron company, and therefore entitled to charge their principal or cestui que trust with counsel fees expended in defending the title to the property, tenable. If they were agents or trustees for the iron company after the delivery of the iron, they were so only as to the surplus coming to the company after the

payment of the advances and expenses due them.    The company had by its contract parted with its control of the iron as the principal owner, or as having any interest therein except as to the surplus.    There was no controversy over the surplus.    Crocker Bros. were not called upon in any way to protect that by employing counsel.    It was their own interest in the iron that they were protecting, and this amounted to many thousands of dollars.    It was to secure this, and realize further sums by a sale of the iron, that induced them to defend their title to the same.    It was their individual interest, and that alone, that was subserved by the litigation.

A third ground upon which Crocker Bros. rest their claim for an allowance of attorney's fees is the fact that an injunction was granted restraining them from making sale of the iron pending the decision of the question whether the iron belonged to them or was subject to the liens of the supply creditors.    They insist that they are entitled to recover attorney's fees as part of the damage occasioned them by the injunction. The authorities quoted to sustain this position relate to actions at law on injunction bonds, and it is sought to apply the same doctrine to an injunction in equity granted on application of the receiver, where no injunction bond is required.    This position is not tenable.    In Oelrichs v. Spain, 15 Wall. 211, the supreme court says: "In debt, covenant, and assumpsit damages are recovered, but counsel fees are never included.    So, in equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants.    The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the expensa litis to which he may have been subjected."    The parties in this respect are upon a footing of equality.    The court perceives nothing in this case to justify it in departing from the principle so often announced in cases of receivership, where counsel fees are asked to be paid out of a fund under control of the court.    The general principle is that a litigant must pay his own counsel fees, and he cannot recover them in the shape of costs from his adversary, nor can he put the burden of their payment upon others entitled to participate in a fund under the control of a court of equity. An exception is made where he has by his services produced the fund, and where his interest is the same as that of others who are benefited by his efforts.    The reason for the exception is thus stated by the supreme court in Trustees v. Greenough, 105 U. S. 527: "He has worked for them as well as for himself; and, if he cannot be reimbursed out of the fund itself, they ought to contribute their due proportion of the expenses which he has fairly incurred.    To make them a charge upon the fund is the most equitable way of securing such contribution." The rule as thus stated has been followed by the federal courts in a number of cases:    Railroad Co. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387; Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870; Meddaugh v. Wilson, 151 U. S. 333, 14 Sup. Ct. 356; Trust Co. v. Condon, 14 C. C. A. 314, 67 Fed. 84.    The claim of Crocker Bros. for attorney's fees and other expenses incurred in connection with the litigation in this cause will be disallowed.