DODDRIDGE COUNTY OIL & GAS CO. v. SMITH et al.

SMITH et al. v. DODDRIDGE COUNTY OIL & GAS CO.

(Circuit Court, N. D. West Virginia. October 18, 1909.)

1. EQUITY (§ 429*)—INTERLOCUTORY DECREE—MODIFICATION.

In a suit in equity to determine the validity of an oil lease, an interlocutory decree was entered sustaining the lease and restoring complainant as lessee to the possession of the premises, but requiring it to pay the actual cost of certain wells drilled by defendant, to be ascertained on a reference, and requiring defendant to account for the production of such wells. On such reference it appeared that one of such wells, although represented in defendant's pleading to be a very fair well, was practically worthless. Held, that the decree was interlocutory as to the accounting, and would not be held to bind complainant to accept and pay the cost of such well, but would be so modified as to give it an election.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 1027; Dec. Dig. § 429.*]

2. EQUITY (§ 431*)—DECREE—RELIEF—DAMAGES.

Under a decree of a federal court of equity, sustaining the validity of an oil lease and awarding the lessee "its direct damages and costs incurred by reason of its exclusion from the lease," it is not entitled to recover from defendant the amount paid its counsel for services, beyond the docket fee taxable under Rev. St. §§ 823, 824 (U. S. Comp. St. 1901, p. 632), either as costs or direct damages.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1048, 1050; Dec. Dig. § 431.*]

3. RECEIVERS (§ 200*)—COMPENSATION—LIABILITY OF PARTIES.

In a suit by an oil lessee, which had been excluded from possession of the leased premises and its wells, drilled under the lease, by the lessor, for an injunction and accounting and the appointment of a receiver, where such receiver was necessary, his compensation, on a recovery by complainant, is recoverable as damages from defendant, if paid by complainant, or from the proceeds of the wells, to which complainant was entitled.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 397, 398, 401; Dec. Dig. § 200.*]

In Equity. Suit by the Doddridge County Oil & Gas Company against Smith and another. On exceptions of complainant and defendants to report of special master. Report modified.

W. S. Smith and A. A. & A. H. Bemis, for complainant.
George W. Johnson, for defendants.
A. G. Patton, for receiver.

DAYTON, District Judge. On the 24th day of July, 1907, I filed a written opinion in these causes ([C. C.] 154 Fed. 970), in which the facts are fully stated. In accordance with this opinion, on the 8th day of August, 1907, a decree was entered, adjudging, among other things, that the lease in controversy was not forfeited or surrendered, but was in full force and effect, and that, while the company should have the right to re-enter and take possession thereunder, it was not, however, entitled to the three wells drilled prior to the date of the lease, or to the oil that might be in the future derived therefrom; that the company should pay to Smith the actual costs and expenses of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

completing the second and third wells, both of which were drilled in since the date of the lease, but such costs and expenses should be limited to the value of the work done and material furnished, without any personal compensation to him for doing it; and that Smith should pay to the company all direct damages and costs incurred by it by reason of its exclusion from the lease.

The cause was by this decree referred to a master, to make an accounting and to ascertain the amount due from the company to Smith and from Smith to the company, to settle the accounts of the receiver, and ascertain his compensation. In the decree it was agreed by the parties, without consenting to the matters adjudged, that the company should have the right for a period of 30 days to purchase at fair and reasonable value such material and machinery belonging to the said Smith and in use in the operation of the wells drilled since the date of the lease, and in case such purchase should be made the special master should not be required to ascertain and report in reference to the value of material belonging to Smith as being on the property prior to the date of the lease. In obedience to this decree the special master, H. O. Hiteshew, has filed as of the 1st day of June, 1909, his report, to which the company has filed 20 exceptions, and the said Smith has filed 12. Their consideration will be expedited by disposing of three matters raised by them, constituting the larger amounts in dispute:

First. It is insisted by the company that the master has erred in charging it with the costs and expenses of drilling well No. 3, named in his report, or named No. 6 in the former opinion. This well, it will be remembered, was drilled by Smith after he had unlawfully ousted the company from the lease, as heretofore held by me, and it had been charged in his cross-bill as "a very fair well." The company now insists that, notwithstanding the decree herein, ascertaining it to be liable to pay the actual expense for the drilling of this well, this decree was entered under the assumption that the company would and did elect to take over this well under its lease, notwithstanding it had been drilled by Smith de son tort. On the other hand, it is insisted by Smith that the terms of this decree are absolutely final and binding upon the company, requiring it to take this well over and pay the expenses to Smith of its drilling. The master has felt himself bound to adopt this latter view, and has reported something over $2,700 in favor of Smith for the drilling of this well. It clearly appears from the evidence that the well was practically worthless, yielding substantially only a half a barrel of oil a day.

In view of the fact disclosed by this record, that Smith had unlawfully taken charge and ousted the company from this lease, and in his cross-bill represented this well to be a fair one, I do not believe it to be in accord with the dictates of equity and good conscience to require this company to pay for drilling this worthless well against their protests. Nor do I think that they have by acquiescence in this decree lost their right, after ascertaining the true facts in relation to it, to repudiate liability on account thereof. While it is insisted that the decree was final and unappealed from, it does not seem to me that these provisions of it related to any other than the details of the accounting

to be had between the company and Smith. Its adjudication of the real matter in controversy—that is, as to the validity of the lease—was final and binding, in that it settled the matter upon which the whole controversy turned. When it came to determining the details of the accounting to be had between the parties, it was purely interlocutory, depending upon the facts that should be ascertained by the master. Again, it may be said it was entered under a mistaken knowledge of the facts, for which Smith, by the allegation of his cross-bill was responsible, and therefore could not be binding upon the company so misled.

I have therefore determined that, if the company so elect, I will not hold it responsible for the expense of drilling third well, and, of course, will allow it no share or part in the oil that has been received therefrom.

Second. It is insisted by the company that, under the clause of this decree which provides that it "shall recover all the direct damages and costs incurred by reason of its exclusion from the lease," it is entitled to a decree against Smith for something over $4,900, attorney's costs, expenses, and fees. This contention has been overruled by the master, and such claim disallowed, and I think properly so. Sections 823 and 824 of the Revised Statutes (U. S. Comp. St. 1901, p. 632) expressly provide that an attorney's docket fee of $20 only shall be taxed in the bill of costs for which a final decree in equity can be rendered. These statutory provisions do not, of course, prevent attorneys from charging and receiving from their clients, in addition to this taxable docket fee, reasonable compensation for their services, but it must be from their client, and not his adversary, in the nature of costs. In Steamer Baltimore et al. v. Rowland, 8 Wall. 377, 19 L. Ed. 463, it is held:

"Attorneys, solicitors, and proctors may charge their clients reasonably for their services, in addition to the taxable costs; but nothing can be taxed as costs against the opposite party, as an incident to the judgment, for their services, except the costs and fees therein [in the statute] described and enumerated."

And in the closing sentence of its opinion in Hauenstein v. Lynham, 100 U. S. 483, 25 L. Ed. 628, the Supreme Court says:

"It is a settled rule in this court never to allow counsel on either side to be paid out of the funds in dispute."

To this general rule there has been certain exception made in cases where a plaintiff has in his own interest and that of others impounded a fund for the mutual benefit of all. In such cases the solicitors of plaintiff have been allowed their fees out of the funds so impounded and decreed to those in the same class as their client. Such cases arise where suits are brought to set aside conveyances for the benefit of creditors, for the administration of decedents' estates, for appointment of receiver and to wind up insolvent estates, to enforce stockholders' liability, and in bankruptcy. Fechheimer v. Baum (C. C.) 43 Fed. 719; Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Central R. R. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915; Jefferson Hotel Co. v. Brumbaugh (C. C. A.) 168 Fed. 867; Lawton v. Perry,

45 S. C. 319, 23 S. E. 53; Burden Central S. R. Co. v. Ferris S. M. Co., 87 Fed. 810, 31 C. C. A. 233; Mason v. Alexander, 44 Ohio St. 318, 7 N. E. 435; Bankr. Act July 1, 1898, c. 541, § 64b, subd. 3, 30 Stat. 563 (U. S. Comp. St. 1901, p. 3447); note to Campbell v. Provident, etc., Society, 54 L. R. A. 817.

Governed by the principles laid down by these and other similar authorities, it is clear that this case is not one coming under the exception, but must be governed by the statute, and therefore the attorney's fees and expenses incurred by the company cannot be decreed against Smith as costs. Nor can they be allowed as "direct damages." Day v. Woodworth, 13 How. 363, 14 L. Ed. 181. In Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43, it is said:

> "The point here in question has never been expressly decided by this court, but it is clearly within the reasoning of the case last referred to (Day v. Woodworth, supra), and we think is substantially determined by that adjudication. In debt, covenant, and assumpsit damages are recovered, but counsel fees are never included. So in equity cases, where there is no injunction bond, only the taxable costs are allowed to the complainants. The same rule is applied to the defendant, however unjust the litigation on the other side, and however large the expensa litis to which he may have been subjected. The parties in this respect are upon a footing of equality. There is no fixed standard by which the honorarium can be measured. Some counsel demand much more than others. Some clients are willing to pay more than others. More counsel may be employed than are necessary. When both client and counsel know that the fees are to be paid by the other party, there is danger of abuse. A reference to a master, or an issue to a jury, might be necessary to ascertain the proper amount, and this grafted litigation might possibly be more animated and protracted than that in the original cause. It would be an office of delicacy on the part of the court to scale down the charges, as might sometimes be necessary. We think the principle of disallowance rests on a solid foundation, and that the opposite rule is forbidden by the analogies of the law and sound public policy."

This rule is upheld in a long line of decisions, among which are Flanders v. Tweed, 15 Wall. 450, 21 L. Ed. 203; Tullock v. Mulvane, 184 U. S. 497, 22 Sup. Ct. 372, 46 L. Ed. 657; Missouri, K. & T. R. Co. v. Elliott, 184 U. S. 530, 22 Sup. Ct. 446, 46 L. Ed. 673; Gilbert v. American Surety Co., 121 Fed. 499, 57 C. C. A. 619, 61 L. R. A. 253; Fidelity Ins. Co. v. Roanoke Iron Co. (C. C.) 91 Fed. 19.

Third. Exception is taken to the compensation of the receiver and his attorney by the company in the event it is to be charged with any part thereof. I am clearly of the opinion that these compensation charges of $400 for the receiver and $150 for his attorney are very reasonable and should be allowed. I am just as clearly of the opinion that such compensation charges should be ultimately paid in full by Smith, although, as to the receiver himself, payable out of any funds in his hands. If paid out of funds due to the company, it will be entitled to a decree over against Smith therefor. The appointment of this receiver was an absolute necessity, occasioned by the unlawful taking possession of the lease and the property upon it by Smith. While such appointment was at the instance of the company, which makes it primarily liable to the receiver for his compensation, such sum, if expended by it, comes clearly within the "direct damages and costs" incurred by it by reason of its exclusion from the lease.

The other exceptions taken substantially relate to specific items in the account stated by the master between the parties. It is sufficient to say that as to many of these the evidence is conflicting, that the master has with very great care and discrimination considered, and I think fairly and correctly determined as to them, and these exceptions will therefore be overruled.

If decree can properly be based upon the master's present report in accord with the principles herein set forth, it will be directed; or, if counsel insist, the cause will be recommitted to the master to reform his report in accordance with this opinion.