BURROUGHS et al. v. TOXAWAY CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 16, 1911.)

No. 1,011.

1. CORPORATIONS (§ 553*)—RECEIVERS—BILL.

Where the interest on the bonds of a corporation was more than four years overdue, and insurance on buildings belonging to it was about to be canceled for nonpayment of the premiums, and some of the real estate to be sold for taxes and its personal property on execution, and the holder of a majority of the corporation's bonds decided not to exercise an option to purchase its property because of alleged defects in the title, but to have the property sold by the trustee under the deed securing the bonds, a bill by him and the trustee, alleging such facts, showed sufficient ground for the appointment of a receiver.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 553.*]

2. RECEIVERS (§ 196*)—COMPENSATION—FEES.

Where the receiver of an insolvent corporation, after his appointment, conducted its affairs in a proper manner, and his acts largely operated to the interest of all concerned, he was entitled to compensation for his services, though the receivership was shortly terminated.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 196.*]

3. RECEIVERS (§ 99*)—COUNSEL FEES—PAYMENT.

The rule that where a receiver duly appointed employs counsel with the court's consent, and such counsel renders services of actual value to the estate, they are to be paid therefrom, does not authorize payment out

of the estate for services of the receiver's counsel in resisting a motion to discharge the receiver.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 99.*]

**4. RECEIVERS (§ 200*)—COUNSEL FEES—CONTRIBUTION.**

Where one or more persons institute a proceeding in equity for the benefit of themselves and all others in a like class who will come into the case and contribute to the expense thereof, and such proceeding results in bringing into court a fund to be distributed among all persons in the class, equity will require that each member of the class seeking to participate in the benefits derived from the exertions of counsel shall contribute pro rata to the reasonable compensation of counsel for their services.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 200.*]

**5. RECEIVERS (§ 99*)—COUNSEL FEES—ALLOWANCE.**

Where a receiver of a corporation was also trustee under deeds of trust executed to secure bonds, imposing active duties on him, and in the discharge of such duties he filed a complaint against the corporation, and later prepared to resist a motion to vacate his appointment as receiver, he was entitled to an allowance for the reasonable fees of his attorneys in resisting such application, under a clause of the deeds providing for his reimbursement for any expenditures necessary and properly incurred by him in the performance of his duties.

[Ed. Note.—For other cases, see Receivers, Dec. Dig. § 99.*]

Appeal from the Circuit Court of the United States for the Western District of North Carolina, at Asheville.

Suit in equity by A. H. Burroughs, as trustee, and others, against the Toxaway Company and others. From a decree (182 Fed. 129) sustaining exceptions to the report of a special master, plaintiffs appeal. Reversed.

Charles A. Moore and Junius Parker (Moore & Rollins, Stevens & Anderson, and W. R. Perkins, on the brief), for appellants.

J. G. Merrimon (James H. Merrimon, on the brief), for appellees.

Before GOFF, Circuit Judge, and McDOWELL and ROSE, District Judges.

ROSE, District Judge. The Toxaway Company is a North Carolina corporation. It owns two large summer hotels, several boarding houses, and 30,000 acres in the mountains of Western North Carolina. Its land is heavily timbered. It has water power of value. All of the property was subject to a first and to a second mortgage. At the time this suit was begun there were outstanding under these mortgages bonds of the aggregate par value of $272,000. The appellant Arrington had $210,000; the appellee Jennings, $62,000. The interest on these bonds had been unpaid and in default for about four years. The company was largely indebted to unsecured creditors. At the time of the filing of the bill in this cause its total indebtedness, secured and unsecured, was upwards of $625,000. Its taxes were unpaid. The sheriff of at least one county had advertised such portions of its lands as were in that county for sale for unpaid taxes. The trustee under the mortgage had received notice that the insurance policies on its hotels would be canceled unless the notes which had been given to the insurance agents for the premiums thereon were paid. A lawyer

had sued it for his bill, had recovered a judgment against it, and had levied execution upon the furniture in one of its hotels. It was the practice of the company to rent its hotels to persons who made their living by conducting summer resorts. The bill in this case was filed May 5, 1910. Late in the season as it was, no lease of either of its hotels had been made for the then closely approaching summer. Even when rented, the net revenue produced by these hotels was small. The rest of its property produced little income.

On or about January 1, 1910, the company had given the appellant Arrington an option to purchase substantially all its property. That portion of it which lay to the south and the east of the Blue Ridge Mountains he could buy, if he wished, for $300,000; that to the north and west of the mountains for $200,000. He at once went to work to find out all he could about the property. He looked into the value of its timber. He satisfied himself, at least roughly, what water power could be developed, and how much it would cost to develop it, and to what use it could be put when it was developed. He had the titles to all the land it claimed to own thoroughly examined. He found that there had been much carelessness in the previous conveyancing. Most persons, who for the first time have the title to wild lands thoroughly examined, have a similar experience. His conveyancers pointed out to him 300 defects in the title. Most of these were trivial. As to the majority of them, it probably made little difference whether they could be removed or not. Almost all of them could be cured at no great expense and with not an excessive amount of trouble. About, 11 of them were, however, serious. The company was at the time a party to a number of suits involving the title to more or less of its land.

Arrington decided not to exercise either of the options. He made up his mind to act under the powers in the deeds of trust securing the bonds. At this time the trustee under the deeds of trust was the Colonial Trust Company of Pittsburg. Pa. The appellee Jennings was an officer of this company. The holder of two-thirds of the bonds could change the trustee without giving previous notice of his intention to any one. It pleased Arrington not to give notice. On the 28th of April he removed the Colonial Trust Company, and appointed the appellant Burroughs trustee. Under the powers contained in the deeds of trust he had the right to declare the principal of both the said issues of bonds to be at once due. This he did. He instructed the new trustee to proceed to collect the principal and interest of the bonds. The appellant Burroughs, as trustee, thereby became entitled to take possession of the mortgaged property and to sell the same. He elected so to do. He preferred, however, not to proceed solely under the powers given him by the deeds. He explains that, as there were disputes over the title to much of the land, he believed that the property could not be sold to advantage until such controversies were definitely settled. He says that he thought, if he did attempt to sell without first having the title cleared, other persons interested in the property would seek to have such sale enjoined, on the ground that the property would not under such conditions bring anything like its fair

and reasonable worth. He made up his mind to go into the United States Circuit Court for the Western District of North Carolina and ask for a receiver.

In his bill he set forth the issue of the bonds, the default of the company thereon, the removal of the former trustee, his substitution in its place, and the election of the holder of a majority of the bonds under each issue to declare them then due, principal and interest. He told the story, as has been before recited, of the other indebtedness of the company, how some of its landed property was about to be sold for taxes, and some of its personal property under execution. He alleged that the improvements upon the land were either then uninsured or about to become so. He explained that a sale could not be wisely made until the titles to the land had been straightened out, and he asked that all proper and necessary accounts be ordered taken and reported, and especially an account showing the true state and condition of the title to said tracts of land embraced and described in said deeds of trust; that the title to the said tracts of land might be cleared of the clouds and defects which might be found to exist thereon and therein, and that a receiver be appointed to take charge and possession of the said property during the pendency of the suit; that such receiver be authorized to hold, manage, and operate said property and the improvements thereon in such manner as might be most advantageous in his judgment to the parties concerned; that he be authorized to issue receiver's certificates to the extent of, but not exceeding, $10,000 for the purpose of managing and operating said property, of paying the said taxes, executions, liens, and notes for premiums on insurance, and to keep the said property insured and free of taxes; that the receiver might be authorized to employ and retain such counsel as he might deem necessary, and to bring, prosecute, and defend all such actions at law and suits in equity as he might deem necessary or advisable for the purpose of protecting such property and of clearing the clouds from the titles to the same, and of remedying the defects in the titles thereto; and that a due and proper attorney's fee might be allowed to the attorneys of the complainant for their services in instituting and conducting the litigation.

Judge Pritchard, sitting as judge of the Circuit Court for the Western District of North Carolina, appointed the appellant Burroughs receiver. There can be no doubt that the bill made out a case for the appointment of a receiver. We have no desire in any way to weaken the force of those declarations which declare the appointment of a receiver is an extraordinary relief, only to be granted where the right to it is clear and the necessity for it great. In view of the great damage and injury which may be worked by the hasty and ill-considered appointment of receivers, we would emphasize every such declaration. But these rules have no application to the case made by this bill. Under the express terms of the deeds of trust the circumstances existed which gave to the trustee the clear right to take the property out of the possession of the defendant company and into his own. The fact that the trustee asked the court to substitute for his personal custody that of a receiver appointed by it and subject to its control harmed no one.

Burroughs was appointed receiver May 4, 1910. That night he left for Asheville. Under the authority given by Judge Pritchard's decree he borrowed $7,500. On his arrival at Asheville he guaranteed the payment of the insurance premiums. He prepared riders, signed by the insurance agents, and placed them at once on the policies. These riders provided that, if there was any loss, it should be payable to him as receiver or trustee, as his interest might appear. So soon as the accounts for unpaid premiums could be accurately made up, he paid the sum ascertained to be due, amounting to $4,345.87. He saw the sheriff who had advertised for sale for unpaid taxes so much of the land as lay in Transylvania county. He paid the taxes, amounting to $1,330.22. He arranged with the sheriff and Judge Shuford to withdraw the levy which had been made at the suit of the latter upon the hotel furniture. He made leases of the company's summer hotels for the coming season on terms much more favorable than those which the company had been willing to accept. Certain suits affecting the title of the company to some thousands of acres of land were marked for trial in a few days. The other parties to these suits were pressing for trial. The lawyer who had been employed for the company was unwilling to do any more work for it, because he saw no reasonable prospect of being paid. Burroughs satisfied him on this point, and he went on with the cases. The actual services thus rendered by Burroughs to the defendant company, and to all interested in it or having just claims upon it, were valuable. They could not have been furnished by any one who was not experienced in large affairs and accustomed to acting in them promptly and skillfully. Three days after the receiver was appointed certain stockholders of the defendant company and the appellee Jennings, the holder of all the bonds not belonging to Arrington, gave notice to the receiver that they would move to vacate his appointment. This motion seems to have been set for hearing on May 31st. On that day or the next, and before any hearing was actually had, Jennings, at the instance or with the approval of the holders of a majority of the stock of the defendant company, purchased all Arrington's bonds at par and accrued interest. Burroughs thereupon presented a petition praying for a settlement of his accounts and the allowance of compensation to himself and his attorneys. By consent of the parties reference was had to a special master to hear evidence as to what allowance, if any, should be made to the receiver for his services and for the services of such attorneys as he had employed in his behalf in his receivership, and as to what, if anything, was due to him as trustee for his services as such. The special master was authorized to decide upon such allowances and report his findings of fact and conclusions of law to the court.

The master in his report allowed $1,500 to the receiver as compensation for his services as such, $500 to him for his services as trustee, and $2,000 to his attorneys for their services to him as receiver. These allowances were excepted to. The exceptions were heard in the court below by Judge Connor. The allowance of $500 to Burroughs as trustee was affirmed. The exceptants alleged that the bill upon which the receiver was appointed did not show facts sufficient to give the

court jurisdiction to grant that particular relief. With this contention Judge Connor, sitting in the court below, did not agree. For the reasons already stated he was clearly right. He was, however, of opinion that no allowance should be made to the receiver for his services as such.

Two considerations appear to have led him to this conclusion:

First. A stockholders' meeting was to be held at the office of the company in North Carolina on the afternoon of the very day upon which Burroughs filed his bill of complaint. The latter knew that such meeting was to be held. Judge Connor was of the opinion that Burroughs should either have communicated to this meeting his intention of applying for a receiver and awaited its action, or should in any event have told Judge Pritchard, when the application for the appointment of a receiver was made, that such stockholders' meeting was to be held. It is admitted that Burroughs did neither.

Secondly. Judge Pritchard inserted in the order appointing the receiver the proviso that any one in interest might upon giving five days' notice in writing move for the dissolution of the injunction granted and for the discharge of the receiver. Judge Connor held that when such notice was actually given within three days of the appointment of Burroughs he should have realized that his position was that of a mere temporary receiver and should have governed himself accordingly.

In the event of default the deeds of trust did not require the trustee to give notice of his intention to take possession of the property. The record shows that the desperate financial condition of the company had been for months known to its stockholders. Under the circumstances of this case, the interest being more than four years overdue, the insurance policies about to be canceled for the nonpayment of premium, some of the real estate about to be sold for taxes, and some of the personal property upon execution, we do not believe that the trustee was under any obligation to notify the stockholders that if they would not save the property he would try to. It may very well be that Judge Connor was right in holding that Burroughs was not justified in doing anything or incurring any expense which ought not to have been done or incurred by a purely temporary receiver. The things which Burroughs did do, and which have been already stated, were things that in the interests of everybody concerned had to be done by somebody and done at once. For the services of this character so rendered by Burroughs the fee of $1,500 allowed him by the special master is in our judgment a moderate compensation. What he did seems to us to have been worth to the company and to all interested in it more than $1,500.

The question as to the compensation of counsel to the receiver remains to be considered. It appears, from the testimony of Burroughs and of the gentlemen for whom he is asking an allowance for counsel fees, that the services rendered by them were rendered principally in preparing to resist the proceedings to vacate the receivership. For such services no allowance can be made to the receiver as such or to them in this case. The grounds upon which courts of equity sometimes make allowance to trustees, receivers, or parties complainant

for the fees they have paid counsel are not always clearly understood. If one or more persons, be they bondholders, unsecured creditors, stockholders, or what not, institute a proceeding for the benefit of themselves and all others in like class with them who will come into the case and contribute to the expense thereof, and such proceedings result in bringing into court a fund to be distributed among all persons of the class, a court of equity will require that every member of the class who seeks to participate in the benefits derived from the exertions of counsel shall contribute pro rata to the reasonable compensation of counsel for what they have done in that matter. Such orders by a court of equity are in no way in conflict with the ordinary rule that every litigant must pay his own counsel fee. They are simply enforcing and applying that rule equitably, so as to compel all the people who benefit by the litigation to contribute to the cost of it.

If a receiver duly appointed employs counsel with the consent of the court, and those counsel render service of actual value to the estate, they should be paid, and paid out of the estate. It does not follow that they should be thus paid for services rendered in resisting a motion to vacate the receivership or discharge the receiver. A receiver as such is a mere officer of the court. In theory, at least, it matters naught to him how long the receivership shall last. He serves the court while the court wants his services. When the court reaches the conclusion that neither his services nor those of any other receiver are needed, that is the end of the matter so far as he is concerned.

The receiver in this case was also a complainant. As has already been pointed out, unless a complainant succeeds in bringing a fund into court for distribution, he is not entitled to have other people compelled to contribute to the payment of his lawyers. But Burroughs was in this case something other than receiver, something more than complainant. He was a trustee under deeds of trust. In the event of a default and upon the request of the holders of a majority of the bonds, these deeds imposed upon him certain active duties. It was in the discharge of these duties that he filed the bill of complaint in this cause and prepared to resist the motion to vacate the appointment of a receiver.

Under the terms of the deeds of trust the trustee is entitled to be repaid by the defendant company any expenditures necessarily and properly incurred by him in the performance of such duties. It follows that the defendant company should be required to pay a reasonable fee for services rendered by the attorneys employed by Burroughs to resist the application for the vacation of the receivership.

Under all the circumstances of this case, as shown in the record, we are inclined to think that the allowance made by the special master to the attorneys should be reduced by one-half; that is to say, that there should be allowed to Burroughs $500 to be paid to his attorney C. A. Moore, $250 to be paid to his attorney H. B. Stevens, and $250 to be paid to his attorney R. G. Lucas.

It follows that the decree below must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.