### STRANG v. EDSON.†

(Circuit Court of Appeals, Eighth Circuit. July 8, 1912.)

No. 3,446.

1. RECEIVERS (§ 103*)—MANAGEMENT AND DISPOSITION OF PROPERTY—ACCOUNTABILITY TO COURT—ANCILLARY MATTERS.

Defendant, as receiver of a suburban railroad company, was authorized to issue receivers' certificates for money with which to equip the road with a new motive power, on condition that the owner of all of the stock of a land company owning lands along the line, who was also owner of practically all of the stock of the railroad company, should assign the land company stock to the receiver, with power to vote the same, to be held as additional security for the receivers' certificates. The assignment was made, and the receiver elected himself president of the land company, and took full charge of its affairs. *Held*, that he held such position for the purposes of the receivership only, and subject to the supervising power of the court, and was bound to act in all matters for the protection and enhancement of the value of the stock as security; that his action in permitting valuable options for the purchase of other land held by the company to be exercised by a member of his family for his own private gain was a violation of his duty, and the transaction might be set aside by the court; but that, where the owner of the stock, with knowledge of the facts, made no objection for a year afterward, and not until it was demonstrated that the purchase was profitable, he ratified the transaction, and could not then attack its validity.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 190; Dec. Dig. § 103.*]

2. CORPORATIONS (§ 211*)—STOCKHOLDER'S SUIT—CONDITIONS PRECEDENT.

To entitle a stockholder to maintain a suit for the benefit of the corporation or other stockholders, he must by his pleadings make a sufficient showing of unsuccessful effort to induce the officers of the corporation to bring suit in the name of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 814–825; Dec. Dig. § 211.*]

Appeal from the Circuit Court of the United States for the District of Kansas.

Petition in equity by William B. Strang against J. A. Edson, as receiver. Petition dismissed, and petitioner appeals. Modified and affirmed.

Justin D. Bowersock (Lester W. Hall, on the brief), for appellant.
Samuel W. Moore, for appellee.

Before HOOK, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

RINER, District Judge. [1] On the 4th of June, 1908, William B. Strang, appellant, filed a bill against the Missouri & Kansas Interurban Railway Company (an interurban line running out of Kansas City), praying, among other things, for the appointment of a receiver. On the same day the railway company filed an answer, consenting to the appointment of a receiver, and by consent of parties J. A. Edson was appointed receiver of all the property and assets of the railway company. Prior to the appointment of the receiver the road had been operated by the use of gas-electric motor cars, which were not successful, and it became necessary to equip the road with an overhead trolley system. An application was made to the court for authority to borrow money for that purpose and to provide for the payment of certain pressing indebtedness. By an order entered on the 6th of July, 1908, the receiver was authorized to borrow such sums of money as might be necessary for the purposes specified in the order, not exceeding $350,000, and to issue receiver's certificates therefor. The order, in addition to authorizing the receiver to substitute an overhead trolley system for the equipment then in use and to pay certain indebtedness specified in the order, contained the following provision:

"This order shall become effective upon delivery to the receiver of all of the issued and outstanding capital stock of the Strang Land Company, indorsed in blank, to be held by the receiver with full power to vote thereon as further and additional security for the payment of each and all of the receiver's certificates that may be issued hereunder."

The appellant, at the time the suit was brought, was the record owner of all but four shares of the capital stock of the railway company, and the owner of all of the capital stock of the Strang Land Company, a corporation owning certain lands along or near the line of railway. At the time of these proceedings the Strang Land Company, in addition to the lands then owned by it, also held options on certain other lands near the line of road, and among the options so held by it was an option to purchase 380 acres of land from Charles O. Proctor. The lands covered by this option included three 40-acre tracts at $150 per acre and three 40-acre tracts at $175 per acre. As directed by the order authorizing the issuance of receiver's certificates, appellant indorsed and delivered to the receiver all of the stock of the Strang Land Company. Upon the advice of counsel the receiver was elected president of the land company and assumed control of its operations. The abstracts of

title were placed in his custody, and he gave directions that no land should be disposed of without first submitting the transaction to him for approval. The option on the Proctor lands was due to expire November 10, 1908. There was, however, as the record shows, an extension carrying it to a later date. The land company took all of the Proctor lands under this option, except one 40-acre tract at $150 per acre and one 40-acre tract at $175 per acre, which were purchased from Proctor by Mrs. Edson, wife of the receiver. This purchase by Mrs. Edson was made, with the knowledge and consent of the receiver, in October, 1908, and prior to the expiration of the option at the option price, and without the payment of any consideration to the land company, whose stock the receiver held as further security for the receiver's certificates authorized by the order of July 6th. We think the evidence clearly shows that at the time Mrs. Edson purchased these two 40-acre tracts they had a value substantially in excess of the option price of the land.

While it is quite true, as appears by the record, the receiver had some difficulty in raising the money for the first payment on this Proctor option, yet it is not, we think, sufficiently clear that the difficulty was insuperable, and in the absence of an order of the court, or the express consent of the owner of the stock, we think the receiver was bound to use the utmost diligence to have the option further extended, if he did not have the money to take it up at the time it expired. That this could have been done is evidenced by the fact that it was done with respect to the other lands covered by the option. By the order of the court the receiver was given, not only complete control of the stock, but also the power to vote it, thus giving him full control over the corporation and all its assets. While it is quite true that at law the stockholders have no title to the corporation assets, yet in equity it must be held that the beneficial interest is in them.

It is suggested that what was done by Edson was done by him as president of the land company, and not as receiver of the railway company, and therefore the court, having supervisory power over him as receiver only, had none over him as president of the land company. This would, perhaps, be true, if he had been elected president only for the more convenient handling of the property and business of the land company in connection with the railway, and the stock had been voluntarily turned over to him by the owner. But that is not the case here. The stock of the land company was placed in Edson's hands as receiver with the power to vote it by an order of the court, the court having in view solely the security of the receiver's certificates; and the power to vote the stock conferred by the order meant, and could only mean, to vote it in such a way and for such purposes as might be considered essential to the objects of the receivership, and to preserve and enhance the value of the stock which he held as further security for the receiver's certificates. It certainly did not mean that he could vote or use the stock for private or individual gain. He could not, in other words, holding all of the stock, as he did, under the order of the court, have himself elected president of the company, and then

draw a line of separation, so far as responsibility is concerned, between himself as receiver upon the one hand, and as president of the land company upon the other. He was the latter only for the purpose of the former; and it cannot be true that, if he reduced the value of the stock which he held as security for the receiver's certificates by disposing of the property of the land company, he could avoid responsibility as receiver. His relation to the entire transaction was a trust relation, and it was his duty to preserve and enhance the value of the stock, rather than diminish it by disposing of a portion of the property.

The case is one where the court will not and ought not to nicely balance and weigh conflicting proof; the transaction not only affected the land company as a corporation, but necessarily affected to some extent the security back of the receiver's certificates; moreover, it affected the good name of the court of equity which appointed the receiver. In such cases courts of equity will ever be jealous not to allow transactions to stand, where there is the slightest doubt of the utmost good faith, after full information as to every detail thereof by all parties concerned. McCourt v. Singers-Bigger, 145 Fed. 103, 76 C. C. A. 73, 7 Ann. Cas. 287. No fraud in fact need be shown. The general rule, said the Supreme Court in Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076 —

"stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. * * * It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells."

And in the same case the court added:

"We scarcely need add that a purchase by a trustee of his cestui que trust, sui juris, provided it is deliberately agreed or understood between them that the relation shall be considered as dissolved, 'and there is a clear contract, ascertained to be such, after a jealous and scrupulous examination of all the circumstances, and it is clear that the cestui que trust intended that the trustee should buy, and there is no fraud, no concealment, and no advantage taken by the trustee of information acquired by him as trustee,' will be sustained in a court of equity. But it is difficult to make out such a case, where the exception is taken, especially when there is any inadequacy of price, or any inequality in the bargain. Coles v. Trecothick, 9 Ves. 246; Fox v. Mackreth, 2 Bro. Ch. 400; Gibson v. Jeyes, 6 Ves. 277; Whichcote v. Lawrence, 3 Ves. 740; Campbell v. Walker, 5 Id. 678; Ayliffe v. Murray, 2 Atk. 59. And therefore, if a trustee, though strictly honest, should buy for himself an estate from his cestui que trust, and then should sell it for more, according to the rules of a court of equity, from general policy, and not from any peculiar imputation of fraud, he would be held still to remain a trustee to all intents and purposes, and not be permitted to sell to or for himself."

It is contended on behalf of the receiver that Strang, the owner of the stock, consented to the purchase by Mrs. Edson of the two 40-acre tracts in question before the purchase was made. We find no direct proof of that fact in the record. The proof relied upon

by the receiver rests upon inference of knowledge on Strang's part, based upon the supposed agency of Hunt, the vice president of the company. Strang denies it; and while there is some testimony tending to show that Hunt acted for Strang, his agency is not sufficiently established to warrant the court in holding that his knowledge was binding upon Strang. But we do not deem it necessary to go into a discussion of the evidence, for the reason, as already suggested, that the nature of the controversy is one that prohibits too close an inquiry into the weight or sufficiency of conflicting evidence.

It is also insisted by the receiver that the sale of the two 40-acre tracts to Mrs. Edson was afterwards ratified by Strang, and the evidence shows satisfactorily that Strang's attitude was one at least of acquiescence and recognition. The sale to Mrs. Edson was made in October, 1908, and according to his own testimony Strang's attention was directly called to the transaction by his bookkeeper in December of the same year. He made no objection whatever at that time, nor at any other time until the 4th of November, 1909, almost a year after the transaction was completed, and after the receiver had been discharged and the property of the railway company restored to its owners.

The evidence shows without contradiction that prior to the receivership both the railway and the land company had been unprofitable enterprises, and that the success of the land company depended, in a large measure, upon the successful operation of the railway. Whether or not the railway could be operated at a profit and give a service that would be attractive to purchasers of suburban property necessarily required some time to determine. If it could, suburban property tributary to it would enhance in value; otherwise, not. The appellant, if not before, certainly knew in December, 1908, that the receiver had disposed of a portion of the property covered by the Proctor option to his wife at the option price. He knew, also, that this suburban property would increase or decrease in value, dependent upon the successful or unsuccessful operation of the railway, and with this knowledge, instead of bringing the matter to the attention of the court promptly, he remained silent for almost a year, without suggesting any dissatisfaction or claiming any interest whatever, waiting, doubtless, to see whether the efforts then being made by the receiver to operate the road at a profit would be successful. At the end of the year it was demonstrated that the road could be so operated, and that the effect of its operation was to increase the value of the suburban property. It was then, and not until then, that Strang intimated to any one that he was dissatisfied with the sale to Mrs. Edson, or that he would claim any interest in the land purchased by her or the profits arising therefrom. It is quite apparent, we think, from the course taken by him, that if the operation of the railway line had proved unsuccessful, and as a result the value of the suburban property had remained stationary or decreased, Strang would not have been heard from in this or any other proceeding. In addition to the delay of almost a year, he used the

fact that Mrs. Edson had purchased these two 40-acre tracts of land for the purpose of inducing prospective buyers of suburban property to invest in lands owned by the company adjoining and adjacent thereto.

We understand the rule to be that where an act is done openly, as was the case here, even in a case where the court would set aside the transaction, if the parties interested promptly filed their objections, that they will not be allowed to speculate upon the chances, and wait until they can see whether the act of which they complain is likely to result in profit or loss. The party complaining must in all cases act promptly, and before the act of which he complains has become the basis of rights or equities which would be greatly impaired if the transaction be set aside. The stock was all in the hands of the receiver for almost a year after the sale of this property to Mrs. Edson, and if Strang was not satisfied with the transaction it was plainly his duty to make his objections known to the court promptly, in order that his interests might be properly protected. We think the record shows a deliberate and calculating attempt on his part to speculate upon the chances, and a disposition to wait until it was demonstrated that the property could be handled at a profit.

[2] There is another reason why we think Strang, suing as an individual stockholder, cannot maintain this suit. Some time before he filed his petition, all of the stock had been returned to him. Edson had ceased to be president and was in no way connected with the land company. It has been repeatedly decided that, before a stockholder can maintain a suit for the benefit of the corporation or other stockholders, he must by his pleadings make a sufficient showing of unsuccessful effort to induce action by officers of the corporations to bring the suit in the name of the corporation, and no such showing is attempted to be made by the petition in this case. Randall v. Dudley, 111 Mich. 437, 69 N. W. 729; Button v. Hoffman, 61 Wis. 20, 20 N. W. 667, 50 Am. Rep. 131; Dickinson v. Consolidated Traction Co. (C. C.) 114 Fed. 232; Rogers v. Nashville, etc., R. Co., 91 Fed. 299, 33 C. C. A. 517; also Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827; Corbus v. Alaska Gold Mining Co., 187 U. S. 455, 23 Sup. Ct. 157, 47 L. Ed. 256; Watson v. Bonfils, 116 Fed. 158, 53 C. C. A. 535. See, also, equity rule No. 94 (29 Sup. Ct. xxxvii).

At the conclusion of the receivership, and after the certificates of stock of the Strang Land Company had been returned to him, Strang, on the day the receiver presented his final report, filed his application in the receivership suit for damages which he alleged he had sustained as a stockholder of the Strang Land Company. His petition is based upon the theory that Edson held the stock for the Strang Land Company in a fiduciary capacity, and therefore is liable for the loss to the company of the 80 acres purchased by Mrs. Edson; that this loss to the company depreciated the value of the stock, and that, as Strang owned practically all of the stock, the greater loss fell upon him; that Edson's alleged miscon-

duct in respect of this 80 acres of land was misconduct in his official capacity as receiver. To this petition the receiver answered, the appellant replied, and testimony was taken. On the 2d of March, 1910, the Circuit Court found the issues in favor of the receiver and entered a decree dismissing appellant's petition. On the 24th of March, 1910, the court, upon application made by the receiver, amended the decree theretofore entered by adding thereto the following:

"It is further ordered and decreed by the court that this decree shall operate and have the effect of a release in full to the defendant, J. A. Edson, for any and all claimed liability made or that may be made on behalf of or in the name of the Strang Land Company on account of the subject-matter of this suit."

We are of opinion that the amendment making the decree apply to the Strang Land Company cannot be sustained, for the reason that the company was not before the court, and therefore could not be affected by any orders made by it.

The trial court is instructed to modify its decree, by striking therefrom the amendment of March 24, 1910, making it applicable to the Strang Land Company, and, as so modified, the decree is affirmed.

HOOK, Circuit Judge. Since it is held that Strang cannot maintain this suit as a stockholder, it seems to me unnecessary to determine whether he ratified the transaction in question.