MISSOURI & K. I. RY. CO. v. EDSON.

(Circuit Court of Appeals, Eighth Circuit. May 12, 1915.)

No. 4225.

*(Syllabus by the Court.)*

1. RECEIVERS &99—COUNSEL FEES—RIGHT TO ALLOWANCE—UNFOUNDED CHARGES OF MALFEASANCE.

A receiver is entitled to the allowance and payment out of the trust estate of the reasonable fees of his counsel for defending him against unfounded charges of malfeasance and breach of trust in the discharge of his duties as receiver, in the absence of dishonesty, bad faith, or fraudulent intent on his part, notwithstanding the fact that, if the claims were well founded, they would entail liabilities upon him individually and would not be payable out of the trust estate.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 183–186; Dec. Dig. &99.]

2. RECEIVERS &99—COUNSEL FEES—RIGHT TO ALLOWANCE.

A receiver or trustee is entitled to the reasonable fees of counsel to defend him against claims arising out of mistakes and errors he makes in the discharge of his duties as receiver in good faith and without any fraudulent or dishonest intent.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 183–186; Dec. Dig. &99.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Petition by J. A. Edson, receiver, against the Missouri & Kansas Interurban Railway Company, for final discharge and an allowance to pay fees of counsel and expenses in defeating certain claims. From a decree for the receiver, the Railway Company appeals. Affirmed.

Justin D. Bowersock, of Kansas City, Mo. (Lester W. Hall and Inghram D. Hook, both of Kansas City, Mo., on the brief), for appellant.

Cyrus Crane, of Kansas City, Mo. (Samuel W. Moore, of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

SANBORN, Circuit Judge. This case presents a single question. May a court of equity lawfully allow and pay out of the trust funds in the hands of a receiver it has appointed his necessary counsel fees for defending himself against baseless charges of malfeasance in the discharge of his duties as receiver, which, if they had been well founded, would have entailed liabilities upon him as an individual and no liabilities against the trust estate? The question arises in this way:

The parties in interest are the Missouri & Kansas Interurban Railway Company, a corporation, the Strang Land Company, a corporation, J. A. Edson, the receiver, and William B. Strang, who owned the majority of the stock of the Railway Company and all the stock of the Land Company and had a judgment against the Railway Company. In June and July, 1908, Strang, as judgment creditor of the Railway

Company, caused the court below to appoint Mr. Edson receiver of the property of the Railway Company and to authorize him to issue receiver's certificates to an amount not exceeding $350,000 for the purpose, among other things, of equipping the railroad, which had been operated by gas electric motor cars, with an overhead trolley system including cars for its operation by electricity. One of the conditions, which was complied with, of the issue of the certificates, was that as security for their payment all the capital stock of the Land Company should be indorsed in blank and delivered to the receiver, with free power to vote it. After the indorsement and delivery thereof Edson elected himself president of the Land Company and as receiver of the Railway Company availed himself of options, due to expire November 10, 1908, to purchase at specified prices four 40-acre tracts of land near the railway which the Land Company held, and failed to avail himself of like options to purchase at specified prices two 40-acre tracts of land held by the Land Company, which his wife bought at the option prices when they were worth more than those prices. These transactions of the receiver became known to Strang as early as December, 1908, but he made no complaint or objection regarding them until November 4, 1909. Meanwhile Edson, as receiver, had issued receiver's certificates, had substituted for the unsuccessful motor car system of operation the overhead trolley system, had provided the requisite cars and equipment for it, and had put the railway in active and remunerative operation; the Railway Company had, on September 24, 1909, filed its petition for the restoration of its property; and the court, on October 21, 1909, had entered its decree that the property of the Railway Company be restored to it, and that the stock of the Land Company be returned to Strang, that the receiver be allowed $17,000 for his services and $8,000 for the services of his counsel and that he file his final account within 30 days thereafter. The receiver immediately restored the property and the stock, and on November 15, 1909, filed his final account. On the same day Strang filed a petition for an order on the receiver to show cause, if any there were, "why he should not be adjudged guilty of a breach of trust and malfeasance in the performance of his duties as receiver, and why he should not be punished as and for a contempt of the authority of the court" because he had failed as receiver to avail himself of the options to purchase the two 40-acre tracts of land which he had permitted his wife to purchase at the option prices. Such an order was issued, the receiver answered, the issues presented were heard and decided on their merits in favor of the receiver by the court below, Strang appealed to this court, the decree in favor of the receiver was affirmed on the grounds (1) that Strang was estopped by his knowledge of the transaction in December, 1908, and his failure to object to it prior to November 4, 1909, to insist upon his claim, and (2) that he was only a stockholder of the Land Company, which was the party injured, if any one was, and that he could not maintain any claim on account of that injury until he first made an unsuccessful effort to induce the Land Company to prosecute its claim. Strang filed a petition for a rehearing in this court which was denied. Strang v. Edson, 198 Fed. 813, 117 C. C. A. 455. He ap-

plied to the Supreme Court for a writ of certiorari to review the action of this court, and the Supreme Court refused to grant it.

On December 11, 1909, the Railway Company filed exceptions to the final report of the receiver, whereby (1) it sought to compel him to pay $14,500 because, as it alleged, he had compelled it to pay that amount to obtain an extension of a note, by failing to borrow the full amount of $350,000 and to issue the receiver's certificates for that amount, and by issuing a smaller amount under a contract that the certificates so issued should be prior and senior to any other certificates that should be subsequently issued, and whereby (2) it sought to compel him to pay $3,933.64 because, as it alleged, he paid Arnold & Co. that amount more than they were entitled to receive under their contract for installing the overhead trolley system. The receiver denied liability for any of these amounts. The issues regarding the claims were heard and decided in the receiver's favor upon their merits in the court below and on appeal in this court. Missouri & Kansas Interurban Ry. Co. v. Edson, 198 Fed. 819, 117 C. C. A. 461.

After the litigation of the claims of Strang and the Railway Company against the receiver which have been described was concluded, the receiver filed a petition for his final discharge, which had been delayed during this litigation, and for an allowance to pay the fees of his counsel and his own expenses in defeating these claims. The parties stipulated that the reasonable value of the services of counsel was $2,500, but the Railway Company opposed any allowance on account thereof, or on account of the receiver's expenses in the litigation of those claims, on the grounds (1) that those services and expenses were not for the defense or benefit of the trust estate, but for Edson's personal defense against charges of personal malfeasance in the administration of the trust, on account of which he personally would have been liable and the trust estate would not have been liable, if they had been sustained, and (2) that his allowance of $8,000 for counsel fees was adequate compensation for all the services of his counsel before and after that date. Testimony was taken on the issues thus made, and the court below decreed an allowance to the receiver of $2,500 for his counsel fees and $107 for his expenses. From this decree the Railway Company has appealed.

[1] In support of their appeal counsel for the company contend that the allowances of $17,000 for services of the receiver and $8,000 for the services of his counsel by the decree of October 21, 1909, were in full payment of all services and expenses of the receiver and his counsel thereafter rendered, as well as of those theretofore rendered, and that, if this were not so, those allowances gave adequate and ample compensation for all their services before and after the date of that decree, so that no more should have been allowed. But neither the receiver nor the court below had any knowledge or notice on October 21, 1908, when that decree was rendered, of the long and strenuous litigation against the receiver which Strang and the Railway Company instituted in the November and December following. The District Court was of the opinion that the allowances of October 21st were not made in payment of the subsequent services of counsel for the re-

ceiver, and that they did not constitute adequate compensation for those services together with their services prior to that date. That court was in a far better situation than this court can be rightly to determine those questions, because it conducted the receivership proceedings prior and subsequent to October 21, 1908, and necessarily had a more intimate and exact knowledge of the character and value of the services rendered than the records can disclose to us. His conclusions upon these questions, therefore, ought not to be set aside, unless the records in hand clearly show that they were induced by some error of law or by some mistake of fact, and a careful review of these records has failed to convince us that they were.

Counsel for the company have cited, among others, Speiser v. Merchants' Exchange Bank, 110 Wis. 506, 86 N. W. 243, Fidelity Ins. Trust & Safe Deposit Co. v. Roanoke Iron Co. (C. C.) 91 Fed. 19, 21, Burroughs v. Toxaway Co., 185 Fed. 435, 441, 107 C. C. A. 505, 511, People v. New York Building Loan Banking Co. (Sup.) 117 N. Y. Supp. 450, 454, Barker v. Southern Building & Loan Ass'n (C. C.) 181 Fed. 636, 638, and Farmers' Loan & Trust Co. v. Green, 79 Fed. 222, 226, 24 C. C. A. 506, and the opinions in these cases have been examined and considered. In reliance upon them counsel contend that no allowance may lawfully be made and paid out of the trust estate in the hands of the court below for the services of receiver's counsel defending him against the claims of Strang and the Railway Company.

They invoke the general rule that each litigant must pay his own counsel fees and that he cannot be permitted to impose the burden of them upon his opponent, whether that opponent be a private individual or an estate held in trust for one or many beneficiaries. There is, however, another rule of at least equal dignity, the rule that a receiver or trustee appointed by a court to hold in trust and administer the property of parties within its jurisdiction is empowered to employ counsel, not only to bring suits and litigate claims for and against the estate, but also to defend himself against claims and suits growing out of acts done or omitted by him in good faith as receiver, and that in the settlement of his accounts he is entitled to the allowance and payment out of the funds or property of the trust estate of the reasonable fees of such counsel for their services. The former rule is not controlling, and the latter governs the disposition of the questions which this case presents.

It is a well-established principle of equity that where one voluntarily goes into a court of equity, takes the risk of litigation upon himself, and recovers a fund in which others are entitled to share, he is entitled to payment of the fees of his counsel out of the fund before its distribution. Counsel cite this principle, and argue that, since the defeat of the claims against the receiver neither recovered nor protected any fund in which the beneficiaries of the trust estate in the receiver's hands were interested, he is entitled to no allowance on account of the services of his counsel in defeating the charges against him. But the principle invoked is inapplicable. The cases in which allowances may be lawfully made out of the trust fund for the services of counsel for a receiver are not limited to those in which those services have effected

a recovery of a fund or the protection or preservation of the trust estate. They include cases in which legal services are rendered to defend receivers against actions for torts as well as upon contracts, against actions in which they are defeated, as they often are in suits on account of personal injuries caused by their negligence in the operation of railroads, and as they sometimes are in actions for breach of contracts, as well as against actions in which they are successful. They include, and they ought to include, all cases arising out of acts done or omitted by receivers honestly and in good faith in the exercise of the authority derived from their appointment and in an honest endeavor to discharge their duties as officers of the courts.

And here is the answer to the contention that the claims defeated by the services of counsel for the receiver were not claims against the trust estate, but claims against the receiver as an individual. It may be that, if these claims had been well founded, Mr. Edson would have been personally liable for the damages which Strang and the Railway Company alleged were sustained by the trust estate on account of the acts and omissions charged against the receiver. But a receiver, an officer of the court, is human and liable to err, and if he makes an honest mistake, or in good faith commits an error, that fact ought not to, and does not, deprive him of the right to the services of counsel at the expense of the trust estate to protect him personally, as well as as an officer, against excessive liability. He is entitled to the services of counsel at the expense of the estate to defend him personally against the unduly injurious effect of all his honest acts or omissions in the exercise of the powers of his office. Opinion of Mr. Justice Bradley in Cowdrey v. Railroad Co., 6 Fed. Cas. 660, 663, 664; opinion of Mr. Justice Paxson in Biddle's Appeal, 83 Pa. 340, 346, 24 Am. Rep. 183; Thome v. Allen (Ky.) 70 S. W. 410, 412; Lycan v. Miller, 56 Mo. App. 79, 85.

[2] Finally, counsel argue that the receiver's omission to exercise the option held by the Land Company to purchase the two 40-acre tracts, which he permitted his wife to buy at the option prices, was a breach of trust and of duty, and that it is fatal to his claim for an allowance for the services of his counsel in defeating the charges against him. They insist that his omission to purchase for the trust estate and his allowance of the purchase by his wife was a corrupt and fraudulent transaction, intended by him to take from the trust estate and to transfer to his wife a pecuniary benefit. If this statement of the transaction were clearly established by the proof, no allowance for counsel fees to defend the receiver against the claim of the Railway Company on account of that transaction ought to be or would be allowed to him or paid out of the trust estate. But although, on account of the moral obligation not to place himself in a position which may excite a conflict between self-interest and integrity, it is a breach of trust and of duty for a receiver or trustee to buy for himself, or for his wife or friend, property of a trust estate in his control, it does not follow from such a transaction that the receiver or trustee was guilty of any fraudulent or dishonest intent therein, for such a transaction works a breach of trust and of duty when done with an honest, as well as when com-

mitted with a fraudulent and corrupt, intent. A fraudulent intent or a dishonest purpose is not to be presumed. The legal presumption is that men, officers of courts, as well as private citizens, intend to heed the moral and the civil law and faithfully to discharge their duties. At the time of the transaction under consideration it was uncertain whether or not the operation of the railroad could be made remunerative or successful, and the value of the land under the options was in large measure dependent upon the future answer to that question. Its operation under the motor car system had been unsuccessful, it would be many months before the trolley system could be substituted, and what its operation would thereafter produce was unknown. A careful consideration of the record and of the situation of the parties at the time of the transaction has failed to convince that the receiver was guilty of any bad faith or fraudulent intent therein, and it is certain that he was guilty of no such intent or purpose in the transactions on which the claims of the Railway Company were based, on account of which at least a part of the allowance for fees and expenses was made.

The conclusion is that there was no error or mistake in the decree which allowed them. Let that decree be affirmed.