TEVANDER et al. v. RUYSDAEL.

(Circuit Court of Appeals, Seventh Circuit. October 1, 1918.)

No. 2554.

1. PARTNERSHIP ⬤⟳104—ACTION BETWEEN PARTNERS—NATURE OF SUIT.
    A suit, in view of pleadings, evidence, and findings, *held* not one to dissolve a corporation, but one within the power of a court of equity, to reestablish the status prior to fraud.

2. PARTNERSHIP ⬤⟳311(5)—CONTRACT TO DISSOLVE—FRAUD—EVIDENCE.
    Evidence *held* to warrant finding of fraudulent representations, relied on, justifying rescission of the executed agreement between plaintiff, a young woman without business experience, and defendant, sole business manager, who had been partner of plaintiff's husband up to his death, for dissolution of partnership between them, organization of a corporation, and transfer to it of partnership assets.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PARTNERSHIP ⊂⟹311(5)—CONTRACT TO DISSOLVE—FRAUD—NATURE OF REPRESENTATIONS.

Representations whereby defendant induced plaintiff to agree to dissolution of equal partnership between them, organize a corporation with the controlling share in defendant, and transfer to it the partnership assets, while some of them were promissory in character, being in substance a statement of defendant's state of mind towards plaintiff, which, if true, would have made the change immaterial, being false, to her prejudice, were representations of facts.

4. PARTNERSHIP ⊂⟹311(5)—CONTRACT TO DISSOLVE—FRAUDULENT REPRESENTATIONS—CARELESS RELIANCE.

A young inexperienced woman *held* not careless in relying on the representations of her partner, the sole business manager, former partner of her deceased husband, for falsity of which she seeks rescission of her agreement with him for dissolution of the partnership, organization of a corporation in which he should have the controlling share, and transfer to it of the partnership assets.

5. PARTNERSHIP ⊂⟹311(4)—PRIVATE DISSOLUTION AND SETTLEMENT—FRAUD—LACHES.

Plaintiff *held* not guilty of laches in bringing suit for rescission of her agreement for dissolution of partnership with defendant, organization of a corporation in which he should have the controlling share, and transfer to it of partnership assets, much of the most convincing proof of the fraud not coming to light till a few months before suit.

6. PARTNERSHIP ⊂⟹311(5)—CONTRACT TO DISSOLVE—AVOIDANCE FOR FRAUD—PARTNERSHIP AGREEMENT.

On avoidance for fraud of contract for dissolution of partnership, the partnership agreement, providing that all patents and inventions of either partner shall belong to the partnership, governs rights of the parties, and patent taken out by one of them is properly adjudged to belong to the partnership.

7. PARTNERSHIP ⊂⟹83—AGREEMENT FOR COMPENSATION—EFFECT OF FRAUD.

Absolute right of a partner to 20 per cent. of profits as compensation as business manager, under agreement of copartner that he should have this for faithful services, is avoided by his attempt to defraud copartner.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Eleanor M. Ruysdael against Olof N. Tevander and others to establish a relation of partnership, recover assets, dissolve such partnership, appoint a receiver, etc. Decree for plaintiff, and defendants appeal. Affirmed.

Appellee sought and secured a decree holding the incorporation of the Standard Cap & Seal Company as for naught, decreeing the relations between Tevander and herself to be those of a partnership, decreeing that the partnership be dissolved, ordering an accounting with Tevander, adjudging that certain patents standing in the name of Tevander be assigned to the partnership, and ordering a distribution of the assets between the parties.

Appellant Tevander and the deceased husband of appellee entered into a partnership to conduct the manufacture of a machine for making seals for capping bottles, the business name being Tevander & Co. Mr. Manierre acquired his half interest in this partnership on June 21, 1910, for which he paid $5,500. The business was very successful. Appellee became a partner shortly after her husband's death, October 7, 1912, her position being the same as that of her deceased husband. Tevander, who was made the active manager immediately thereafter, received a salary of $5,000 per year, which in 1914 was increased to one-fifth of the net earnings, with a guaranteed minimum of $6,000.

In January, 1915, the corporation, Standard Cap & Seal Company, was formed under the laws of Illinois, with a capital stock of $50,000, of which Tevander took 251 shares and appellee 249, issued in exchange for the assets and good will of the copartnership, Tevander continuing in the active management of the company. Upon the execution of the formal assignment of the business assets and good will of the copartnership to the corporation, the parties, by a written agreement, canceled the contract of partnership.

During the last year of the copartnership the profits, after deducting Tevander's 20 per cent., amounted to about $45,000. Immediately upon incorporation, with the consent of a nonstockholding director, Tevander reduced the cash dividends to 10 per cent., secured in his own name patents in which appellee claimed an interest, drew as his salary for 1915 the sum of $21,274.40 and for 1916 $33,359.22.

Although a director, and to a certain extent controlling the second director, who held no stock, Tevander endeavored to sell to the corporation the new patent standing in his name.

In the articles of copartnership it was agreed that "all patents and inventions of either partner shall belong to the partnership, and at the time of the application shall be assigned to the partnership. No partner has a right to grant a license, sell, assign, or reassign any patent or invention without the written consent of the other."

Appellee testified that at the time the agreement to organize the corporation was entered into she asked Mr. Tevander about the title to inventions, to which Mr. Tevander replied: "Of course, anything I invent along the lines of the business will belong to the company. The law takes care of this and there is no use writing it down."

The District Court made specific findings covering all of the issues, and all of them were favorable to appellee. Among other things the court found:

"(7) During the existence of the partnership between Tevander and plaintiff, Tevander formed a plan to eliminate plaintiff from the half ownership in these new inventions, and the patents therefor, when they should issue, to which she was entitled under the terms of the partnership agreement, by inducing her to terminate the copartnership then existing between them, by transferring all the assets thereof to a corporation; planning and intending to withhold from plaintiff all information concerning the new invention and device, and to withhold application for patents therefor until after the termination of the partnership and the transfer of the assets to the corporation.

"(8) During the month of January, 1915, and prior to the 22d day thereof, Tevander, designing to cheat and defraud plaintiff, conceived the scheme of inducing her to consent to the incorporation of the business, planning to induce her to give him one extra share of stock in the corporation which he planned to organize, intending to use the control thereby given him in the selection of a board of directors, a majority of whom would do his bidding, so that by refusal to declare dividends he might so reduce plaintiff's income as to make her dependent upon his will, and by these means and other cunning devices so discourage and harass her as to force her to part with her interest at a figure far below its real value.

"9. With the foregoing designs Tevander represented to plaintiff that the business was assuming such proportions that the copartnership could be carried on more conveniently and with greater profit as a corporation; that the business of the copartnership could go on as before, but, as to the extra share to be given him, this was merely to enable him to have his own way with the management, and to protect him in event of her death, remarriage, or sale of her interest against evilly disposed persons who might set out to wreck the business for the purpose of robbing him of his interest therein; that he would treat her as he always treated her; that, so long as she remained his partner in the business, he would consider he held this extra share as much for her benefit as for his own; that her income would not be reduced. On the other hand, Tevander threatened that unless she would assent to his wishes he would bring suit to dissolve the copartnership; that no one but himself understood the business or would desire to purchase it; that the result of such suit would be the sale of the business at a price far

below its real value; that in the event of such sale she would realize very little for her interest; all of which representations were false and fraudulent and made by Tevander with the fraudulent designs aforesaid.

"(10) By the foregoing and divers other cunning persuasions, promises, and threats which, at the time of making them, he did not intend to fulfill or perform, and which were made for the purpose of cheating and defrauding and for the purpose of eliminating plaintiff from any ownership in his new inventions when they should have been perfected and patented, Tevander induced plaintiff to consent to the organization of a corporation, to be managed by three directors, who need not be stockholders, and to transfer to him, at the nominal consideration of $250, one extra share of stock which would otherwise belong to her, when the real value thereof was largely in excess of this price."

Additional specific findings necessary to sustain appellee's bill were made.

As conclusion of law the court found:

"(26) By reason of the fraud practiced by Tevander upon plaintiff, the assignment of the assets of the copartnership on February 22, 1915, to Standard Cap & Seal Company, and all subsequent assignments of the assets of the copartnership to the corporation, and the cancellation and termination of the agreement of copartnership indorsed upon the written agreement thereof (attached to bill of complaint herein as Exhibit 2), and the contract entered into between plaintiff and Tevander, January 27, 1915 (attached to the bill of complaint as Exhibit 3, providing for the payment to Tevander of 20% of the net profits per annum as and for salary), were at the time of their several executions void and of no force or effect, and the oral agreement of copartnership entered into between plaintiff and Tevander in October, 1912, and confirmed by the written agreement of copartnership entered into October 31, 1914, has continued in full force and effect until the date hereof, and the patents for the new closure and closure-applying machines covered by United States letters patent numbered 1,200,669 and 1,219,791 were procured by Tevander during the copartnership between plaintiff and himself, and the ownership of these patents are subject to the terms and conditions of their partnership agreement. * * * "

Appellants attack (a) the authority of the federal court by decree in chancery to dissolve the corporation Standard Cap & Seal Company; (b) the findings of the court on the issues of fraud and fraudulent representations; (c) appellants also attack that portion of the decree requiring Tevander to assign patents standing in his name to the partnership.

Edward W. Everett and Dwight B. Cheever, both of Chicago, Ill., for appellants.

Albert Fink, of Chicago, Ill., for appellee.

Before BAKER and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge (after stating the facts as above). [1] Was the federal court without authority to enter the decree here attacked?

Appellants urge that this is a suit to dissolve an Illinois corporation, the appellant herein, Standard Cap & Seal Company; that the federal court should adopt the rulings of the highest court of Illinois upon the authority of a court of equity to dissolve such corporation (Sim v. Edenborn, 242 U. S. 131, 37 Sup. Ct. 36, 61 L. Ed. 199; Ennis Water Works v. City of Ennis, 233 U. S. 652, 34 Sup. Ct. 767, 58 L. Ed. 1139; Yazoo & Miss. V. R. R. v. Adams, 181 U. S. 580, 21 Sup. Ct. 729, 45 L. Ed. 1011); that it is the established law of the state of Illinois that a corporation cannot be dissolved except by complying with the statutes in respect thereto (Wheeler v. Pullman Iron & Steel Co., 143 Ill. 197, 32 N. E. 420, 17 L. R. A. 818; People v. Weigley, 155 Ill. 491,

40 N. E. 300; Shriver v. Day, 276 Ill. 403, 114 N. E. 918); that a federal court cannot, independent of statutory authority, dissolve a state corporation (Wells Co. v. Gastonia Co., 198 U. S. 177, 25 Sup. Ct. 640, 49 L. Ed. 1003; Conklin v. U. S. Ship-Building Co. [C. C.] 140 Fed. 219; Republican Mountain Silver Mines v. Brown, 58 Fed. 644, 7 C. C. A. 412, 24 L. R. A. 776); that the record fails to disclose facts bringing the case within any of the reasons enumerated by the Illinois statute as sufficient ground for dissolution.

With these various contentions there can be no quarrel, but appellee contends this is not a suit to dissolve the Illinois corporation, Standard Cap & Seal Company, but is one to set aside an agreement made between appellee and Tevander, entered into through false and fraudulent representations made by Tevander and relied upon by appellee, and to restore the partnership theretofore existing, and terminated only by reason of the fraudulent agreement, and to retransfer to such copartnership assets fraudulently taken from it, and to secure such relief upon the re-creation of the copartnership as one partner is entitled to receive in a winding-up proceeding.

The prayer for relief, while not conclusive, is instructive. Among other things complainant prayed that—

"the incorporation of the business of the copartnership heretofore existing be held for naught, and it be decreed that the true relations existing between Tevander and herself are those of copartnership; that the partnership be dissolved, an accounting be had with Tevander and the assets distributed between them; that Tevander be required to set forth the nature of his new Improvement and inventions, and decreed to hold the same in trust for the copartnership; pending final determination of this cause a receiver be appointed," etc.

The allegations in the bill set out with considerable particularity the history of the copartnership and the corporation; the fraudulent representations and inducements made by Tevander to secure a termination of the partnership and the organization of the corporation, wherein Tevander secured, through the ownership of a majority of the stock, permanent control of the policy of the company; the efforts of Tevander to avoid the provisions of the copartnership respecting title to patents, heretofore quoted; the securing of patents in Tevander's name; and efforts to force appellee to sell her interest in the company's business. The findings support appellee's theory that no dissolution of the corporation is involved. It appears to us that the pleadings, evidence, and findings justify this court in concluding that the suit is one to re-establish the status quo ante the fraud, dissolve the partnership, grant an accounting, appoint a receiver, and divide the assets.

While appellants strenuously contend that to strip the corporation of its assets is in substance to work a dissolution, they overlook the fact that the property passed to the corporation by reason of an agreement secured through fraud. Inasmuch as Tevander and appellee are the only stockholders of the corporation, and therefore the rights of third parties are not involved, no good reason is seen why a court of equity should not grant such relief as will afford appellee adequate redress for the wrongs by her suffered through the fraudulent representations of Tevander.

While no authorities are cited in support of the jurisdiction of a court of equity upon facts such as here disclosed, we find none of appellants' citations in point. Surely a court of equity will delight in finding the necessary means of enforcing its decrees against delinquent defendants, and its powers are as extensive as the exigencies of the case demand. If appellee was induced to enter the agreement to dissolve the partnership and create the corporation through the fraudulent representations of Tevander, will a court of equity permit the latter to escape liability by hiding behind the fictitious third party, the corporation, the stock of which he and appellee are the sole owners? The assets of the copartnership were turned over to this corporation by reason of the action of the copartners, which action was induced by the fraudulent representations of appellant Tevander. This fact being shown, the right of the corporation to the assets of the copartnership is subject to be defeated upon proof that fraud was practiced upon the copartnership. In other words, the title of the corporation to the assets here involved rests upon an assignment from the copartnership. Contemporaneously executed and indorsed on the back of the assignment is an agreement to dissolve the copartnership. Both assignment and agreement to dissolve in turn rest upon the written agreement of Tevander and appellee (a) to dissolve the copartnership, (b) organize the corporation, and (c) assign to the latter the assets of the former. If fraud tainted the last-named agreement, its consequences reach all three transactions. Even though the corporation may not be dissolved, no good reason is advanced why it should hold property under an assignment secured through fraud.

We conclude the court was authorized to grant the relief decreed in this suit.

[2] Does the evidence warrant the finding that Tevander made false and fraudulent representations relied upon by appellee to her damage, and which fraudulent representations justified the court in rescinding the agreement made to dissolve the copartnership?

In the previous discussion the court assumed that the evidence justified the findings of the court in favor of the appellee. But appellants deny the sufficiency of the proof to warrant such findings.

A careful and thorough examination of the evidence justifies the conclusion that not only was there evidence to support the court's findings, but no other conclusion would have been warranted.

It will serve no useful purpose to restate in detail the evidence which leads us to this conclusion. It will be sufficient to say that the parties hardly stood at arms' length and dealt as strangers. Appellee was a young, inexperienced person, whose husband had engaged with appellant Tevander in a business that was unusually profitable. Upon the death of her husband, appellee, then scarcely of age and entirely inexperienced in business matters, immediately made Tevander sole manager of the business, intrusted him with the entire conduct of the business, and paid him a princely salary—in 1914, $10,644.24, in 1915, $21,274.40, in 1916, $33,359.22. In addition thereto Tevander's share of the profits exceeded the amounts received by him as compensation. Immediately upon securing control of the corporation through the

ownership of a majority of stock, Tevander secured action preventing the payment of any cash dividends in excess of 10 per cent., although the annual profits of the company exceeded 300 per cent. of the capital. This conduct is hardly explainable upon any theory other than that he hoped thereby to force appellee, who was accustomed to live beyond an income of $2,500, to sell her interest in the business.

Tevander's conduct with reference to the patents is even more reprehensible. Under an agreement with his deceased partner to turn over to the partnership any patent that might be secured by him that pertained to the business of the partnership, it is impossible to reach any other conclusion than that he sought the dissolution of the copartnership to rid himself of this written obligation. No sooner had the copartnership been dissolved, and the agreement with reference to patents terminated, than he filed application in the patent office for a patent in his own name, which patent covered a machine that threatened to displace the one manufactured by the company. Controlling two of the three directors, he endeavored at a subsequent meeting of the directors to sell this patent to the company for the sum of $500,000.

[3] But appellants urge that there were no actionable misrepresentations made by Tevander, and if the findings of the court, Nos. 8 and 9, heretofore quoted, be accepted, no fraudulent statements appear upon which a suit to rescind a contract might be predicated. In other words, it is claimed that the statements made by Tevander that—

"the business was assuming such proportions that the copartnership could be carried on more conveniently and with greater profit as a corporation; that the business of the copartnership could go on as before, but, as to the extra share to be given him, this was merely to enable him to have his own way with the management and to protect him in event of her death, remarriage, or sale of her interest against evilly disposed persons who might set out to wreck the business for the purpose of robbing him of his interest therein; that he would treat her as he always treated her; that so long as she remained his partner in the business he would consider he held this extra share as much for her benefit as for his own; that her income would not be reduced.  *  *  * "

—were mere promissory representations, and were not actionable.

With this conclusion we cannot agree. While some of these representations were promissory in character, they were in substance but an expression of Tevander's state of mind toward appellee. If the statements were true, then appellee was justified in assuming that the partner of her deceased husband, and her own partner for a year and a half, entertained no covetous designs upon her property, but only desired to treat her in the manner in which a confiding partner might well expect from an active partner, well compensated for his responsibility. If the statements were true, then Tevander's attitude toward appellee was such that it mattered not whether the business was conducted as a copartnership or as a corporation, whether the share which gave to Tevander the majority of the stock stood in the name of one party or the other, or in the name of both. Surely such representations were material and persuasive only as they impressed appellee with the asserted open, fair, and friendly state of mind which appellant Tevander professed to possess toward appellee.

No separate consideration of appellant's claim that appellee was not influenced or induced to act by the representations is necessary. It ap-

pears that, notwithstanding the warning given her by friends, she chose to place reliance upon the professions of friendship made by her partner, the friend of her deceased husband. She relied thereon even as against the judgment of disinterested advisors.

[4] Nor can we say that she was careless in so relying upon Tevander's representations. The business had been wonderfully successful. She had received in the year 1914 over $18,000 for her share of the profits, after paying Tevander his salary, and after providing a reasonable surplus in the treasury. The entire responsibility rested upon Tevander, and appellee was not unmindful of Tevander's right to be protected in case of her sudden and unexpected death.

[5] Nor are we impressed with the claim that appellee failed to act promptly after discovering the fraud. Proof of the deception came only by piecemeal. Courts are slow to hold the defrauded party guilty of carelessness because of his or her reluctance to believe a former associate or partner false to his trust. Appellants are not in a good position to urge the enforcement of any harsh rule based upon appellee's tardy awakening. Much of the proof of the most convincing character did not come to light until a few months before suit was instituted. We conclude appellee was not guilty of laches.

[6] Did the court err in adjudging that Tevander held the patents in trust for the partnership?

Under the agreement made between the original parties to the partnership, all patents of the character under consideration belonged to the partnership. Tevander's claim to them arose from the agreement terminating the partnership. This contract, having been avoided by the fraud heretofore mentioned, the original agreement governed the rights of the parties, and the court properly adjudged the patents to belong to the partnership.

[7] Complaint is also made because the court refused to allow Tevander, as his salary, 20 per cent. of the profits for the year 1916.

By the decree an accounting was ordered and all matters referred to a master. Under such accounting Tevander may be allowed a reasonable compensation for his services during this year. Whether the master will allow 20 per cent. of the net profits or a lesser sum will depend upon all the facts and circumstances disclosed upon such hearing. Clearly, Tevander has forfeited his right to an absolute claim to the sum fixed in the contract. The agreement allowed him a given per cent. of the net profits for *faithful* services.

The decree is affirmed.

Judge KOHLSAAT participated in the hearing of this suit and concurred in the conclusion, but died before the announcement of this opinion.