### TEVANDER v. RUYSDAEL.

### RUYSDAEL v. TEVANDER.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1924.)

### Nos. 3327, 3328.

1. **Trusts ⬅︎377—Plaintiff, at whose suit a trust is established and administered, is entitled to expenses of suit from trust fund.**

Where a party interested in a trust estate is compelled to bring suit to establish and enforce the trust, he is entitled to reimbursement for the expenses incurred from the fund being administered by the court, and this rule applies, though only plaintiff and a single defendant are interested in the fund.

2. **Costs ⬅︎3—Only statutory costs are taxable against an adverse party.**

The only costs that are taxable against the parties to equitable causes are those fixed by statute and those which arise out of an administration of assets in the custody of the court.

3. **Equity ⬅︎409—Findings of master presumptively correct.**

The findings of a master are presumptively correct, and should not be set aside or modified, in the absence of some clear error or mistake.

4. **Partnership ⬅︎83—Fraud of partner held not to deprive him of right to salary as manager of business.**

That the manager of a successful business is chargeable with fraud toward his partner does not deprive him of his right to the salary earned as manager.

5. **Receivers ⬅︎200—Costs of receivership made necessary by defendant's fraud taxable against him.**

Where the fraudulent conduct of defendant made it necessary for the court to take possession of property by its receiver, to conserve it pending the suit, the costs of the receivership were properly taxed against defendant.

---

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests &·Indexes

**6. Corporations ⬳560(5)—"Debts of the business," assumed by purchaser at receiver's sale, held to include income tax.**

Though a corporation was adjudged to have fraudulently acquired the property and business of a partnership, and to hold it in trust for the partnership, where the business was conducted by and in the name of the corporation, a purchaser at receiver's sale, who assumed all existing debts of the business, *held* liable for an income tax assessed against the corporation for a previous year.

**7. Taxation ⬳1—"Tax" defined.**

A tax is a charge or burden laid upon persons or property for public purposes; a forced contribution authoritatively imposed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tax—Taxation.]

**8. Receivers ⬳145—Defendant held not chargeable with interest on money in hands of receiver.**

A defendant *held* not chargeable with additional interest on money belonging to plaintiff from the proceeds of a sale, but retained in the custody of the court and invested in securities by its receiver.

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Eleanor M. Ruysdael against Olof N. Tevander. From a decree on accounting, both parties appeal. Modified and affirmed.

John H. Bishop, of Chicago, Ill., for plaintiff.

Before ALSCHULER and EVANS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge. Appeals by both parties from a decree of the District Court disposing of an accounting ordered in pursuance of the decision in Tevander v. Ruysdael, 253 Fed. 918, 166 C. C. A. 18, are before the court. There is involved also a controversy between Ruysdael and the purchaser of the assets concerning the income taxes for the year 1918, accruing because of the profits made by the receiver out of the operation of the business in that year. The various controversies will be discussed separately.

### Plaintiff's Solicitors' Fees and Expenses.

[1] In the original bill the plaintiff sought and secured a decree holding the incorporation of the Standard Cap & Seal Company for naught, adjudging the true relation between Tevander and herself to be that of copartners, decreeing that the partnership be dissolved, ordering an accounting with Tevander, adjudging that certain patents standing in the name of Tevander be assigned to the partnership, and ordering a sale and distribution of the assets between the partners. Tevander v. Ruysdael, 253 Fed. 918, 166 C. C. A. 18. The possession of and legal title to the assets were then in the corporation. Plaintiff sought, not that the corporation be dissolved, but that the transfer to the corporation be declared void, because of the fraud, and the assets delivered up to a receiver, to be appointed by the court, for distribution. This court, in the former appeal, said:

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"A careful and thorough examination of the evidence justifies the conclusion that, not only was there evidence to support the court's findings, but no other conclusion would have been warranted."

Thus it will be noticed that the purpose of the bill was to bring recognition to a trust estate, the existence of which was denied, to recover the legal title to the same, and to have the same administered by the court. In this particular the suit differs from the ordinary suit to dissolve a copartnership, which has legal title to assets, and involves, in addition, litigation necessary to procure a decree finding that the property held by the corporation was the property of the copartnership, of which plaintiff and defendant were the sole members.

Plaintiff now seeks to have taxed against the defendant her solicitors' fees and expenses in this litigation, amounting to $25,445.04. The master found this amount to be reasonable, but neither the master nor the District Court made any such allowances. It is a general rule that attorney's fees and expenses are not allowable against a defendant or against a fund, but certain exceptions exist, among which are cases where a trust estate is sought to be established and a decree entered finding that property ·not appearing to be trust property ·is in fact trust property, and should be administered as such. In the case of Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157, the Supreme Court said:

"It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority that where one of many parties having a common interest in a trust fund at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, *or by proportional contributions from those who accept the benefit of his efforts.* * * * Allowances of this kind, if made with moderation and jealous regard to the rights of those who are interested in the fund, are not only admissible, but agreeable to the principles of equity and justice. * * * The Circuit Court had the power, in its discretion, to allow to the complainant, Vose his reasonable costs, counsel fees, charges, and expenses incurred in the fair prosecution of the suit, and in reclaiming and rescuing the trust fund and causing it to be subjected to the purposes of the trust."

The facts do not distinguish the present case in its essentials from that case. Here it has been adjudged that Tevander by his own fraud secured the transfer of the assets to the corporation, fraudulently controlled the same as against the rights of the plaintiff, and in the name of the corporation, which he controlled, was unjustly depriving her of her beneficial interests in the property. Because of this fraud, and for no other reason, upon its discovery, she was compelled to submit to the court evidence sufficient to establish the finding that the property was not in fact the property of the corporation which held it, but was in equity the property of herself and the defendant as copartners. She asked, and it was decreed, that Tevander should surrender to the copartnership a patent which was of very great value, and which he had been claiming as his own and endeavoring to sell to the corporation for $500,000. By the litigation the entire res of the estate was recovered and brought into the court to be administered, thus bringing the case directly within the doctrine of Trustees v. Green-

ough. It is only equitable, therefore, that the fund which was thus recovered and sequestered in the hands of the court should bear the expense of the recovery of that fund, which was thereafter administered for the joint benefit of both plaintiff and defendant. It would be a harsh and inequitable rule that would compel the plaintiff to undergo the expenses which she underwent in this case in order to show the existence of a trust fund, concealed through the fraud of the defendant, and to bring it into court after so recovering it, for the equal benefit of herself and her copartner, without any reimbursement from the copartnership for any part of the expenses of the recovery.

Such a rule, we understand, would not be in accordance with the recognized authorities. Harrison v. Perea, 168 U. S. 311, 18 Sup. Ct. 129, 42 L. Ed. 478. One Perea died, leaving his property to a minor child. Harrison became guardian of the minor, took the estate into his own hands, and administered it, mingling the funds with his own and using the property as his own. The minor, reaching maturity, brought suit to sequester the property that was his, to have the court determine what was his, and accounting had, and distribution made. The court awarded plaintiff solicitor's fees, saying:

"We think no error arises from the action of the court below. By the exertions of the solicitor the fund was recovered, and it was properly made to bear some portion of the expense of its administration."

Defendant in that case was the fraudulently acting guardian. The case is a complete answer to the contention of the appellee Tevander to the effect that courts of equity allow solicitor's fees for plaintiffs' solicitors only when the fund secured and administered by the court is the property of a great number of parties, or in which a great number of parties have a beneficial interest. We perceive no reason why the plaintiff should not receive the same reimbursement for conducting litigation which identifies and establishes trust property withheld by fraud, and obtains its sequestration by the court, where there is only one other person who will share in that fund, as in cases where the number of persons who will share in the fund are numerous. As this court said in McIntosh v. Ward, 159 Fed. 66, 86 C. C. A. 256:

"Courts of equity also have a wide discretion in making and controlling allowances from the fund for services and expenses in conserving and administering a fund that has been brought into court."

We do not find the cases cited by appellee Tevander in contravention of the rule above announced.

[2] However, we are of the opinion that these expenses cannot be taxed as costs against the defendant personally. Upon well-known principles, the only costs that are taxable against the parties to equitable causes are those fixed by statute, and those which arise out of an administration of the assets in the custody of the court. It is equitable to allow to the plaintiff the expenses to which she was put in order to prove the existence of the trust fund, and to bring it into court, and to allow in an accounting from said fund such reasonable expenses. But we are not persuaded that there is any equitable rule by virtue of which these fees may be taxed against an adverse party

as court costs. Plaintiff will therefore be allowed one-half of this amount as against defendant, and same shall be paid to plaintiff from the funds in receiver's hands.

### Salary of Tevander.

[3] Appellant Tevander insists that the court erred in fixing his salary from January 1, 1915 to July 31, 1917, when the receiver was appointed, at the rate of $10,000 per year. During that period, Tevander drew on account of salary $60,466.93, the same being 20 per cent. of the profits. This court has previously held that the contract between the parties, so fixing the salary during a certain period, is not now of binding effect, and that Tevander has forfeited his right to enforce the said contract according to its terms. Under the prior decision, the master was charged with the duty of determining what was a reasonable salary for the faithful services of Tevander during said period. Evidence was submitted by both parties, and the master found that a reasonable allowance was 20 per cent. of the profits. We have read the evidence, and cannot say that the master erred in his conclusion. "While the findings of the master in this particular are not absolutely binding upon the court, there is a presumption in their favor, and they will not be set aside or modified in the absence of some clear error or mistake." Girard Ins. Co. v. Cooper, 162 U. S. 529, 16 Sup. Ct. 879, 40 L. Ed. 1062. The evidence was controverted, but was sufficient to sustain the master's finding.

[4] Plaintiff's contention that, under the ruling announced in Wadsworth v. Adams, 138 U. S. 380, 11 Sup. Ct. 303, 34 L. Ed. 984, Tevander, because of his fraud, forfeited all right to any salary, cannot be sustained. As the master found, the fraud complained of and found by the court to exist was the personal fraud of Tevander toward appellee, based upon his effort to gain control of the prosperous business, and to deprive her of her interest therein. The court fails to appreciate that such fraud can affect, in any way, the question of whether or not the manager of the successful business, in managing it, has earned a salary. The master's finding in this connection should be approved, and plaintiff's claim for credit for one-half of the salary paid Tevander for the period mentioned denied, and the sum of $3,777.-12, one-half of the salary for the first seven months of 1917, not yet paid, allowed to defendant and charged against plaintiff.

### The Receiver's Fees.

[5] The appellant Ruysdael contends that the entire receiver's fees should be taxed as costs against the defendant Tevander, or, in other words, that Tevander should reimburse her for the one-half of the solicitor's fees which have been paid from the funds, and charged against her interest therein. The amount is $13,250. The District Court, reversing the master, held that this entire fee should be charged against Tevander, who contends that it should be paid from the funds, and not taxed against either party personally. The general rule is that receiver's expenses, in the absence of statute, should in all cases, as between the parties, be adjudged upon equitable principles, and that

they are sometimes taxed as costs to be allowed out of the funds, and sometimes taxed against the unsuccessful party, whose conduct created the necessity for a receiver. 34 Cyc. 364.

In Doddridge Gas Co. v. Smith (C. C.) 173 Fed. 386, the plaintiff brought suit against the defendant, alleging that the plaintiff had fraudulently ousted and kept him from enjoyment of lands rightfully leased to him for oil purposes. The property was being operated as an oil property, and because the defendant refused to surrender to the plaintiff, or to recognize plaintiff's rights, a receiver was necessary. The court found ultimately that the plaintiff's complaint was true, that the defendant had fraudulently deprived the plaintiff of his rights, and ordered the surrender of the premises and an accounting. The court upon final hearing ordered that the receiver's fees be' taxed as costs against the defendant, saying:

"I am clearly of the opinion that these compensation charges of $400 for the receiver and $150 for his attorney are very reasonable and should be allowed. I am just as clearly of the opinion that such compensation charges should be ultimately paid in full by Smith, although, as to the receiver himself, payable out of any funds in his hands. If paid out of funds due to the company, it will be entitled to a decree over against Smith therefor. The appointment of this receiver was an absolute necessity, occasioned by the unlawful taking possession of the lease and the property upon it by Smith."

In Geer v. Finn, 196 Mich. 738, 163 N. W. 20, the plaintiff sued for dissolution of the partnership, and the court found that the defendant was in control of the partnership property, and was defrauding the plaintiff, and that the plaintiff had thereby been forced to sue for' an accounting, and, sequestration of the property. The court taxed the receiver's fees against the defendant, saying:

"It appearing that the plaintiff herein was compelled to file his bill to obtain his rights in the matter, and the court having found that the equities were with him and that the allegations in his bill were sustained by the proofs, we are of the opinion that under such circumstances the expenses of this receivership should in equity and justice be borne by the defendant. The decree determined that the defendant was in the wrong, and the plaintiff should not now be made to bear the burden of paying the receiver's fees, when *by the defendant's unlawful action it was made necessary to have a receiver appointed.*"

The case at bar is much stronger. Here it was necessary to take the property from a corporation and sequester it in the possession of the court beyond the fraudulent attacks of the defendant during the pendency of the case against him. The receiver was appointed, not after a decree finding the facts to be as set forth in the plaintiff's bill, but immediately upon the filing of the bill, in order to sequester the property and hold it from the defendant's fraudulent practices, until the court should be able finally to determine the facts involved. The rule announced above, therefore, applies with much greater force than in the cases cited. Other cases to the same effect, are Ervin v. Collier, 2 Mont. 605; Costello v. Scott, 30 Nev. 43, 93 Pac. 1, 94 Pac. 222; Kennedy v. Hill, 89 S. C. 462, 71 S. E. 974. As the Supreme Court of Illinois held in Highley v. Deane (1897) 168 Ill. 266, 48 N. E. 50:

"The law is not so powerless that a court of equity may be invoked to sustain an unjust claim, and, when it necessarily takes charge of property by

its receiver, can only pay that receiver out of the funds in his hands, and as to the receiver's charges must let the person who rendered necessary the appointment go free of costs, and have the costs paid out of the proceeds of an innocent party's property. Such a rule would require an innocent party, after vindicating his right to his property, to have it taken to pay an expense resulting from the wrongful act of the defeated party."

The case of McIntosh v. Ward, supra, is to be distinguished from the case at bar. There the court held that the rights of the parties were merged in the decree for dissolution, whereupon a receiver was appointed, and that the sums paid out by the receiver for labor in the operation of the plant could not be taxed as costs against the defendant.

The order of the District Court in this respect will be affirmed.

### Income Tax for 1918.

[6] During the year 1918, subsequent to the entry of the decree entered after the previous appeal, the business was conducted by the receiver. The Treasury Department first ruled that the income taxes for the year should be computed upon a copartnership basis and should be assessed against the individuals as copartners. Two years later the department reversed this holding, and ruled that the income tax for the year 1918 should be assessed against the business as a corporation. The decree and order of sale both provided that at a sale the purchaser should assume all existing debts against said business. There were no known debts, but the receiver retained $20,000 from the purchase price of $451,000 as indemnity against the purchaser's assumption. Apparently this retention was made without any arrangement or agreement between the parties. After the original holding by the Treasury Department, at the request of the purchaser, $13,000 was surrendered to it, and $7,000 retained, $2,000 of which was used to pay a capital stock tax imposed by the government, and $5,000 of which was ultimately paid by the receiver as part of the income tax finally assessed against the business as a corporation. The balance of the income tax for the year 1918, being $19,972.25, was thereafter paid by the receiver from the funds in his hands.

Plaintiff filed a petition in court, asking that the purchaser be required to reimburse the receiver for the last-named amount. The purchaser appeared and answered, and upon hearing the court denied the petition, refusing to charge the purchaser with the tax. This action is assigned as error, on the ground that, inasmuch as the tax assessed was a corporate tax, it thereupon became a debt of the business, which under the terms of the order of sale should be paid by the purchaser; the plaintiff alleging, also, that the purchaser is estopped by its action to deny its liability. The purchaser contends that after the decree was entered the business became that of a copartnership, and even though the government may have assessed the tax as a corporate tax, as between the parties, the business was a copartnership business, and the tax should not be paid by the purchaser, because it was not a debt of the business, but an individual liability. The purchaser contends, also, that the words "assume all debts of the business" do not include an assumption of income taxes, and that it could not have been intended that the purchaser pay the taxes assessed against the corporation, in

view of the language of the order of sale providing for the sale "of the assets of the Standard Cap & Seal Company, the copartnership heretofore existing between plaintiff and defendant." The order of sale also provided that the sale should include "all shares of the capital stock of a certain alleged corporation organized and existing under the laws of the state of Illinois, and known as the Standard Cap & Seal Company."

[7] The word "debt," in its technical meaning as applied to common-law actions, is not synonymous with the word "tax." Lane County v. Oregon, 74 U. S. (7 Wall.) 71, 19 L. Ed. 101. But the word "debt" is not always used with this limited technical meaning. A "tax" may or may not be a debt under a particular statute, according to the sense in which the word is found to be used. U. S. v. Chamberlin, 219 U. S. 254, 31 Sup. Ct. 155, 55 L. Ed. 204. The word "debt" is frequently used in its well-recognized sense as that which is due from one person to another; that which one person is bound to pay another; a thing owing; an obligation; a liability. The character of a tax is well known. It is a charge or burden laid upon persons or property for public purposes; a forced contribution authoritatively imposed. When it is imposed annually—that is, when the law provides for its imposition—it is, before its due date, a liability in futuro, imposed by law, and when finally imposed it becomes a fixed liability, a thing owing, a matured obligation.

It is apparent from the language used that the parties intended that the purchaser should assume all obligations or liabilities of the business. The parties knew that the law imposes income taxes. All parties knew that at the time of the sale the income taxes were liabilities in futuro; that they would become, when imposed, a fixed liability, a thing owing to the government. The purchaser, therefore, by assuming the debts of the business, included income taxes of the business.

Purchaser's counsel does not seem to have controverted seriously the proposition that the word "debt" was intended to include taxes, for in asking for a return of the money retained by the receiver, in a letter of September 2, 1919, he bases his ground for the return, not upon the proposition that "debts" did not include "taxes," but apparently upon the further proposition that the taxes were individual debts, and not business debts. The language used in that letter was this:

"The income and excess profits taxes for prior years were paid on the basis of a partnership, and not on the basis of a corporation. The government officials, I understand, are figuring the taxes as to individuals, and Mr. Tevander has paid the amount requested from him, so that there is no reason to withhold any funds on this account."

The original decree entered on October 14, 1917, provided among other things:

"*That Standard Cap & Seal Company holds the legal title to all the assets and property, real, personal, and mixed, of which it is possessed (in law and equity), in trust for plaintiff and Tevander, and plaintiff and Tevander are entitled to an assignment in due and legal form from Standard Cap & Seal Company of all such assets and property. That all the assets, good will, contracts, business, and estate, real, personal, and mixed, in law and in equity, of Standard Cap & Seal Company, and the new inventions for closure and*

299 F.—48

closure applying machines covered by United States letters patent numbered 1,200,669 and 1,219,791, dated October 10, 1916, and March 10, 1917, respectively, hereinbefore mentioned and described, be sold as hereinafter provided, and the proceeds thereof held for distribution between Tevander and plaintiff as their interests may appear, but that said assets, business, property, patents, and good will be sold as an entity. That Central Trust Company of Illinois be and it hereby is appointed receiver of all and singular the property, real, personal, and mixed, of every description, and of all moneys, claims in action, credits, bonds, stock, leasehold interest, and operating contracts, and other assets of every kind, and all other property, real, personal, and mixed, hereinbefore adjudged belonging to plaintiff and defendant Tevander, the legal title and possession whereof is now vested in Standard Cap & Seal Company, to have and to hold the same as an officer and under the order and direction of this court. That said receiver hereby is authorized and directed to take possession of all and singular the property above described, *and to continue the business of the Standard Cap & Seal Company.* Each and every officer director, agent, and employé of Standard Cap & Seal Company hereby is required and demanded forthwith, upon the demand of the receiver, to turn over and deliver to such receiver any books, papers, moneys, debts, or property or vouchers for property under their control. * * * That plaintiff, Tevander, and Standard Cap & Seal Company, be and they and each of them is hereby ordered and directed, by due and legal conveyance in such appropriate form as the receiver shall demand, to convey to the receiver, upon its demand, all and singular the assets, property, and patents hereinbefore mentioned and described."

The language of the further order of sale has heretofore been referred to. This court did not, in its former decision, dissolve the corporation or attempt to do so, but it found the status to be, as adjudged in the decree entered subsequently, that the corporation held the legal title to the assets in trust for the copartnership. This title was transferred to the receiver, who thereupon succeeded to the legal title and held the same in trust for the copartnership. The transfers to the corporation by the copartnership were set aside as fraudulent, and, so far as the rights of the parties between themselves were concerned, the status quo ante restored. The business was then being conducted, and had previously been conducted as a corporation. So far as the rights of third persons were concerned, so far as the government was concerned, the business was a corporation in its legal relationship with other people, and obviously because of this fact the Treasury Department ruled that the tax assessed should be that of a corporation. Any debt owing because of the operation of the business was, so far as third persons were concerned, a corporate obligation, for which the copartnership property became liable in equity. Had money been borrowed by the corporation at the bank for the purposes of the business, the obligation would have been a corporate obligation, which the copartnership property was bound to pay. So the taxes owing to the government, being an obligation of the copartnership business standing in the name of a corporation, was, as to third persons, a corporate tax, a corporate debt, though the copartnership assets would become charged with the same. So, when the purchaser agreed, by bidding under the decree of the court, to assume all debts of the business, he must have intended to assume all obligations which, because of the peculiar circumstances, were as to all third persons corporate debts, but which in equity were chargeable against the copartnership. There is no inconsistency between this finding and the former decree. The purchas-

er must be charged with the balance of the income tax for the year 1918, amounting to $19,972.25.

### Other Features of the Account.

[8] The claim for interest upon $100,000 detained in the receiver's hands from the plaintiff's share of the proceeds of sale should be denied. The fund mentioned was in the custody of the court, and invested by the receiver, under the direction of the court, in interest-bearing securities. No principle is known to the court upon which the defendant Tevander could be charged with any additional interest that it is claimed should or could have been obtained. Nor does the court find anything in the record that sustains any objection by either party to any of the other items in the accounting, as determined by the court below. In view of the foregoing conclusions, and the record that has been submitted, the court finds no necessity for further evidence upon the issues presented, and makes final adjudication of same, as follows:

Tevander is charged with the following items, and they shall be paid to the plaintiff, Ruysdael, from Tevander's share of the funds in receiver's hands: One-half of the necessary expenditures of the original suit, including reasonable attorney's fees, stenographers' fees, and court costs, $12,722.52; one-half of the receiver's fees, $13,250; one-half of the purchase price of automobile, $950; one-half the amount paid by Tevander to his personal attorney, Flannery, $1,000. Total, $26,922.52. The plaintiff, Ruysdael, owes the defendant Tevander the following items, which shall be paid by the receiver from plaintiff's funds in the receiver's hands to said defendant: One-half of salary during the first seven months of 1917, $3,777.12; for one share of stock, with interest, $316.40; for one-half the amount paid in experimentation on patent, $2,376.69; one-half of the amount paid Attorney Flannery from private fund, $100. Total, $6,570.21. In addition, the purchaser of the assets, the Standard Cap & Seal Corporation, shall pay to the receiver for the joint equal benefit of Tevander and Ruysdael the balance on income taxes for the year 1918, amounting to $19,972.25, together with interest at the rate of 5 per cent. per annum from date of said payment, November 16, 1922, and this sum, when so received, shall be distributed by the receiver to Tevander and Ruysdael in equal amounts. The account and decree of the court below, as modified above, will stand approved, and final judgment will be entered in this court in accordance with this opinion. The costs shall be taxed in equal parts against Ruysdael, Tevander, and Standard Cap & Seal Corporation.

The decree of the District Court, so modified, is affirmed.