### SHEPARD v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 6708.

Circuit Court of Appeals, Seventh Circuit.

Jan. 11, 1939.

Rehearing Denied Feb. 18, 1939.

Leland K. Neeves and Homer H. Cooper, both of Chicago, Ill., for petitioner.

James W. Morris, Asst. Atty. Gen., and Berryman Green, Sewall Key, and F. E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS and TREANOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

We are here confronted with the validity of a tax assessed against the alleged transferee of a corporation which dissolved without paying its income tax and without assets from which the tax could be collected.

The facts: The City Ice and Supply Company, an Illinois corporation, herein. called the Old Company, had a stock issue of 3,325 shares of common stock and 1,000 shares of preferred stock, each of the par value of $100. Petitioner and an associate, Hunt, entered into negotiations with two officers and stockholders of the Old Company, which resulted in the execution of a thirty day option to purchase the common stock at $200 per share. The option was never exercised, and its importance lies in its possible bearing on the subsequently executed escrow agreement out of which the tax in question grew. The second agreement named a bank as escrow agent to hold in escrow all certificates of capital stock of the Old Company; it provided that the stockholders execute proxies to petitioner who also acquired the exclusive option to purchase the stock deposited with the ·escrow agent on the payment of $200 per share for common stock, two-thirds of which was to be in cash and one-third in 7% preferred stock of an Illinois corporation to be known as the City Ice and Coal Company, herein called the New Company; and also provided for the redemption of the preferred stock at $105 per share. The agreement contained other provisions which, however, do not bear on our question.

The New Company was promptly organized. Directors of the Old Company accepted the proposal of petitioner and his associate which is evidenced by letters from petitioner to the Old Company from which the following excerpts are taken:

*Offer submitted May 6, 1926, and accepted May 7, 1926.* "All existing liabilities of City Ice and Supply Company to be assumed and paid by the parties making this proposition and payment thereof guaranteed by

the corporation to whom will be made the conveyance herein contemplated."

*May 6, 1926.* "Steps have been taken by the undersigned to acquire the physical properties and certain other assets of the City Ice & Supply Co., an Illinois corporation chiefly engaged in the manufacture and sale of ice in the City of Chicago. Such acquisition being on the basis of assumptions and payment by us of all liabilities and obligations of said City Ice and Supply Company. We propose to cause to be conveyed to you certain of such assets as set forth in the statement hereto attached marked 'Schedule A', in consideration of the payment and delivery to us or our nominees of—"

*May 10, 1926.* "It is the object of this memorandum effectively to designate and constitute said City Ice and Coal Company and ourselves, respectively, as our nominees to whom shall be conveyed, assigned and delivered the property purchased by us in pursuance to our written offer above mentioned."

Change in plans by petitioner was necessitated because of inability to raise the cash requirements. Under second agreement the purchaser used cash of Old Company and proceeds of a $375,000 first mortgage bond issue of New Company. When payments had been fully made, petitioner signed a receipt to the bank for "forty options and 4,365 shares of Capital Stock representing all of the common and Preferred Stock of the Old Company. After cancellation these certificates can be returned to L. R. to complete records of Old Company."

Petitioner did not take possession of the stock which he received. His attorney refused to accept the certificates, saying, "We don't want it; it is not ours." The stock was thereupon left with the escrow agent and later by it returned to the Old Company.

The New Company issued 200 shares of common stock, of which petitioner and his associate each took 96 shares and 8 were scattered. Additional shares were subsequently issued to petitioner and his associate who were at all times the officers and directors of the New Company.

The Old Company kept its books and filed its income tax return for the year 1926 on the accrual basis. It did not report as income any profit from the sale of its assets. No question was ever raised by it as to the correctness of the Commissioner's determination that the Old Company's net profit of $277,748.42 from this transaction should have been included in its 1926 income. The Commissioner subsequently added this profit to the income reported by the Old Company and determined the deficiency tax at $37,766.04. The Old Company had no assets and the tax was never paid by it. Subsequently the Commissioner determined a deficiency tax against the petitioner for the amount of this unpaid tax, acting under section 280 of the Revenue Act of 1926, 44 Stat. 61, which deals with the liability of transferees.

The Commissioner first assessed the tax against the stockholders of the Old Company as transferees, but this position was not sustained by the Board of Tax Appeals. The Commissioner then proceeded against petitioner and his associate. Two grounds were advanced for the Commissioner's action against petitioner: (a) Petitioner's agreement to assume all existing liabilities of the Old Company, and (b) the propositions of law applicable to one who is a transferee of another taxpayer's assets. This liability is also asserted on the theory that one is a trustee who has taken all of the taxpayer's assets without paying its income taxes.

The petitioner's defenses are several—as many as the theories of the Commissioner.

As to liability growing out of his agreement to assume the Old Company's debts, he asserts that income taxes accruing and assessed subsequent to the execution of his agreement were not part of "existing liabilities" thereby assumed. He denies that he is a transferee within the meaning of section 280 of the Revenue Act of 1926 and also denies liability on the theory of a trustee: first, because the facts do not make of him a trustee; second, there is no showing that the Old Company was insolvent when he closed his dealings with it; and third, even as a trustee he would not be liable for income taxes subsequently assessed when the purchase price was paid to the stockholders of the Old Company.

To a large degree he rests his contention on a fact basis; namely, that the profit occurred after the property was transferred and therefore he was not liable on any theory for a debt or tax obligation arising after his transactions with the debtor were closed.

Respondent also stresses a fact, viz., petitioner acquired *all* of the assets of Old Company and paid the purchase price therefor to a *third party,* thereby making it im-

598

possible for the Old Company to pay any part of its tax.

Several of petitioner's contentions are readily disposed of.

■ *Res judicata.* The earlier holding of the Commissioner to the effect that the stockholders of the Old Company were the transferees and liable for the tax may be somewhat embarrassing as a matter of fact, but it in no way operates as a legal bar to the same official's taking a different position later on. In the prior proceedings before the Board, the parties were not the same as here. The evidence was not the same. To a certain extent the issues were not the same. Clearly then, there was no room for the application of the doctrine of *res judicata.*

The extent and degree of factual embarrassment depend largely upon one's regard for the sacredness, the sanctity, and the all-around virtue of consistency. Slavish devotion to consistency rather frequently accompanies a tenacious pride of opinion. At other times it indicates merely a lack of imagination. Assuming that the Commissioner believed the facts pointed to liability on the part of the stockholders as transferees, and his mistake was demonstrated to his satisfaction by the opinion of the Board of Tax Appeals, and the Commissioner then decided to pursue the petitioner herein, there is presented no cause for serious embarrassment.

■ Whether petitioner or the stockholders should be liable for the tax as transferees is still the subject of earnest and honest dispute. Our determination of the question can not in the slightest degree be affected by the theory of the Board of Tax Appeals in another case or the Commissioner's view or theory of the instant case.

The amount of the tax against the Old Company for its 1926 income was not the subject of challenge either by pleading or argument before the Commissioner or the Board of Tax Appeals. We accept it as correct.

■ Likewise, we are satisfied that the action of the Board of Tax Appeals should be sustained if the facts show its conclusion was correct regardless of the soundness of the theory it adopted in reaching its conclusion. Commissioner v. Kelly's Estate, 7 Cir., 84 F.2d 958, 963; Starr v. Commissioner, 4 Cir., 82 F.2d 964, 966.

■ The prevailing party should have the right to advance all of the reasons which support the decision of the Board on the merits, and exceptions to any of the Board's adverse rulings are unnecessary in order that a victor may, on appeal, advance reasons by it made before, and rejected by, the Board.

■ This brings us to the merits of the controversy. We are convinced that the decision of the Board of Tax Appeals must be affirmed on both grounds urged by respondent. That is to say, petitioner, by his agreement to assume all of the Old Company's "existing liabilities," became bound to pay the income tax which the consummation of said agreement created. Likewise, in a case where corporation A transfers all of its assets to B for a consideration which B pays to C, then B, regardless of any agreement, is liable for any unpaid income tax, which represents the profits made on such transfer on the theory that B is a trustee, to the extent of the value of the property which it acquired from A.

■ We have held and hold again that a tax may be a debt. For stronger reasons it may fall within the possible meaning of the word "liability." In the same case under the facts there shown, we held that the term "existing debts" should be construed in the light of the understanding and intention of the parties at the time of the execution of the agreement to include Federal income taxes subsequently assessed by the Commissioner. Tevander v. Ruysdael, 7 Cir., 299 F. 746. For more extended discussion, but with the same conclusion, see Helvering v. Wheeling Mold & Foundry Co., 4 Cir., 71 F.2d 749.

Reviewing the circumstances present in the instant case which color the intent and meaning of the words "all existing liabilities," we find the parties to the agreement were providing for the transfer of all the assets of the taxpayer to petitioner and his associate who agreed to pay the stockholders of said taxpayer a sum equal to the value of the assets thus transferred. This left the taxpayer with nothing. It owed debts. Its profits for the year, due largely to the agreement in question, were large. An income tax of some $37,000 would be lawfully due thereon when the Commissioner made the assessment after the taxpayer made its return. All this was known to the parties who made the agreement in question. They contracted in the light thereof, and it was expressly provided in their agreement that petitioner and his fellow

promoter Hunt should assume "all existing liabilities."

Petitioner's argument is in effect this:

We took all of the assets of the taxpayer away from it. We paid the price which represented the fair value of the assets so taken, to third parties, the stockholders. We agreed with the stockholders to pay "all existing liabilities" of the taxpayer. This, as we understood it, included all the debts, but did not include income taxes not yet due but which nevertheless were as certain to become due as anything in life.

The inescapable answer to the query,—How was the taxpayer's liability to the Government arising out of this transaction to be satisfied?—is,—The Government loses.

To give to the language of the contract such a version or construction would necessitate our impugning both the intelligence and the integrity of the parties. To assume that the parties would entertain the belief that by such a simple device as disposing of all of the assets of a taxpayer its taxes could be avoided, is to question the intelligence of the parties so acting. To assume that the parties contemplated and carried out plans which left the Government's claim for taxes growing out of the transaction unpaid, reflects on the integrity of the same parties.

It is fairer to assume, as was done in the two cases cited above, that the parties did not specifically cover the subject of inchoate taxes because the broad term "all existing liabilities" covered the situation.

■ Equally clear and definite must be the holding that one who dispossesses another company of all of its assets, paying the consideration therefor to a third party, and leaving the propertyless corporation unable to pay its debts, including taxes which were inchoate at the time, becomes a trustee and liable in such trusteeship for taxes and other debts in an amount not exceeding the value of the property taken from the debtor taxpayer. This is so, not alone because of any transferee liability section of the Revenue Act, but because of the application of principles of equity. Fletcher "Cyclopedia of Corporations", vol. 7, page 8398, sec. 4756; Brum v. Merchants' Mut. Ins. Co., C.C., 16 F. 140; Hibernia Ins. Co. v. St. Louis & N. O. Transportation Co., C.C., 13 F. 516; Grenell v. Detroit Gas Co., 112 Mich. 70, 70 N.W. 413; Jennings, Neff &

Co. v. Crystal Ice Co., 128 Tenn. 231, 159 S.W. 1088, 47 L.R.A.,N.S., 1058.

■ The theory of these holdings is that courts of equity will protect creditors from fraudulent action on the part of the debtors by holding the recipient of the debtor's property as a trustee thereof for the benefit of the creditors of said debtor.

■ We see no possible application for the asserted tax exemption based on the theory that the transaction between the Old and the New Companies was a reorganization for which the Revenue Act of 1926, § 203, 44 Stat. 12, makes special provision.

The order of the Board of Tax Appeals is affirmed.